**Jimmy Rex WHALEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 365–84.**

Court of Criminal Appeals of Texas, En Banc.

July 2, 1986.

Ward Casey, Fort Worth, for appellant.

Brock Smith, Dist. Atty., and Patrick Morris, Asst. Dist. Atty., Decatur, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S AND APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant was convicted in a jury trial of delivery of less than twenty-eight (28) grams of hydromorphone and delivery of five pounds or less, but more than four ounces of marihuana. These allegations were contained in a single indictment. See Art. 4476–15, Secs. 4.03(b) and 4.05(b)(4), V.A.C.S.

At the punishment phase of the trial the jury found the enhancement allegations in the indictment to be true. The trial court assessed punishment at life imprisonment

in the Texas Department of Corrections. See V.T.C.A., Penal Code Sec. 12.42(d).[1]

The case was appealed to the Fort Worth Court of Appeals alleging several grounds of error. On original submission the Court of Appeals reversed and remanded the cause. Appellant applied for and was granted a motion for rehearing. The Court of Appeals withdrew their original opinion and again reversed the trial court in an unpublished opinion. *Whaley v. State*, (No. 02-83-108-CR, Tex.App.-Ft. Worth, Feb. 15, 1984). Appellant, although prevailing in the court below, sought discretionary review with this Court, alleging he was denied his statutory right to a speedy trial under the Texas Speedy Trial Act. Article 32A.02, V.A.C.C.P. This was granted.

The State in turn sought and was granted discretionary review on the two grounds that were sustained by the Court of Appeals in reversing appellant's conviction. The State's first ground for review alleges that the Court of Appeals erroneously held the trial court erred by failing to define the term "constructive transfer." The second ground alleges that the Court of Appeals erred by holding the trial judge committed reversible error by making a comment on the weight of the evidence in the jury charge. We will address appellant's ground for review first.

Appellant maintains that the Court of Appeals erred in not finding that he was denied his right to a speedy trial under the Texas Speedy Trial Act, supra. Because of the nature of appellant's claim, the pre-trial procedural history of this case is important. It is as follows:

May 21, 1982: Appellant was arrested for delivery of hydromorphone and marihuana.

June 18, 1982: Appellant was indicted in Cause No. 8272 alleging unlawful delivery of hydromorphone and marihuana under the Organized Crime Act, V.T.C.A., PENAL CODE, § 71.02, and in violation of the Controlled Substances Act, Art. 4476-15, Secs. 4.03(b) and 4.05(b)(4), V.A.C.S. No amount of either controlled substance (marihuana or hydromorphone) was alleged in this indictment.

June 22, 1982: The State filed a written announcement of ready.

August 24, 1982: Appellant was reindicted in Cause No. 8296, which contained substantially the same allegations as the indictment in Cause No. 8272, except that it specified the amount of the controlled substance delivered and alleged the delivery was made by actual transfer. Also this indictment added Counts V and VI which alleged felony possession of marihuana and aggravated possession of hydromorphone respectively. Art. 4476-15, Secs. 4.051(b)(4) and 4.04(c), V.A.C.S.

August 24, 1982: The State filed a written announcement of ready.

November 8, 1982: Appellant was granted a motion for continuance.

November 12, 1982: Appellant was reindicted in Cause No. 8312. In addition to alleging delivery of hydromorphone and marihuana (cause # 8272), and specifying the amounts (cause # 8296), the indictment in cause # 8312 alleged the manner and means of delivery by actual and constructive transfer. The indictment in cause # 8312 did not contain the counts which were in cause # 8296 concerning possession of hydromorphone and marihuana.

The State filed a written announcement of ready.

December 6, 1982: Trial began on the indictment in Cause. No. 8312.

Allegations of violation of the Organized Crime Act were dropped and appellant was convicted of unlawful delivery of hydromorphone and marihuana under

---

1. V.T.C.A., Penal Code Sec. 12.42, Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974. Amended by Acts 1983, 68th Leg., p. 1750, ch. 339, Sec. 1, eff. Sept. 1, 1983; Acts 1985, 69th Leg., p. 4459, ch. 582, sec. 1, eff. Sept. 1, 1985. This case was heard prior to the effective date of the 1983 and 1985 amendments. Thus the applicable law at the time of trial made life imprisonment mandatory under the circumstances of this case.

the Controlled Substances Act, specifically Art. 4476–15, §§ 4.03(b) and 4.05(b)(4), V.A.C.S.

The State regards indictment no. 8312 (the third, final indictment) as a reindictment of the two previous indictments. As such, the State maintains any apparent discrepancies in the relevant charging instruments are refinements of their allegations, made to support the evidence as it developed for trial preparation. Specifically, the State maintains that the third and final indictment alleges with greater particularity the allegations set forth in the first and second indictments. This position prevailed in the Court of Appeals. The State further showed that the prosecution timely announced ready at every relevant stage of the proceedings.

Appellant contends that the offenses alleged in the first and second indictments are different offenses than those alleged in the final (third) indictment and are subject to different proofs. Therefore, the third indictment, which was not filed within 120 days of the commencement of the present case, must be dismissed. See Art. 32A.02, Sec. 1(1) and Sec. 2(a), supra. Appellant cites *Richardson v. State*, 629 S.W.2d 164 (Tex.App.—Dallas 1982, pet. ref'd.), in support of this contention.

In *Richardson*, supra, there were two separate offenses, burglary of a vehicle and third degree theft. Although both offenses arose from the same transaction, they were subject to different proof. For this reason the Dallas Court of Appeals correctly dismissed the second indictment, which had been returned after the time limits of the Speedy Trial Act had passed. *Richardson*, at 165.

In the present case, there are two counts in each of the three successive indictments alleging the offenses of unlawful delivery of hydromorphone and marihuana, respectively. In all three indictments, in both counts (marihuana and hydromorphone), appellant is alleged to have acted individually and, in the same count, in conjunction with other persons in violation of the Organized Crime Act. See V.T.C.A. Penal Code,

Sec. 71.02. In the third indictment, there are two *additional* counts (one count for each controlled substance) wherein appellant is alleged to have acted individually in delivering the hydromorphone and marihuana and these charges are pled in *addition* to the two counts which allege appellant acted individually and in conjunction with other persons.

The fact that the State subsequently dropped the portions of the charges relating to organized crime does not affect the proof required for delivery of the controlled substances. The offenses of *unlawful delivery* of hydromorphone and marihuana are subject to exactly the same proof whether included in the same count as an Organized Crime Act violation or alleged in a separate count. See *Rosebury v. State*, 659 S.W.2d 655, 657 (Tex.Cr.App. 1983). We find the unlawful delivery charges in the first indictment to be the same cases as in the second and third indictments. *Richardson*, supra, is therefore inapplicable.

Accordingly, we hold the first announcement of ready on June 22, 1982 carried compliance with the Speedy Trial Act forward to the third indictment. The judgment of the Court of Appeals on this issue is affirmed.

We now address the State's petition for review. Because of the nature of the State's argument and claims, a statement of the facts is necessary to clarify the issues involved.

On May 12, 1982, Officer M.S. Carroll, an undercover officer working with the Ft. Worth Police Department, was investigating a narcotics complaint in Tarrant County. On that date Carroll alleges she was approached by Charles Opie Jones, later charged as a party in connection with the offense for which appellant was convicted. At that time Jones sold Carroll a quantity of marihuana. Carroll arranged to meet Jones the next evening in order to transact another narcotics sale. At that transaction, Jones sold Carroll additional marihuana and allegedly offered to sell her some

Dilaudid (hydromorphone). Jones stated that the Dilaudid was located at a ranch which was 40 miles away.

At a subsequent meeting, Carroll in fact bought some Dilaudid and more marihuana. On May 18, 1982, Sgt. Jim Clifton of the Ft. Worth Police Department, who had been posing as Carroll's boyfriend, began to talk with Jones. Clifton was also working undercover and represented to Jones that he wanted to buy a quantity of Dilaudid. They agreed to meet the following day. On May 19, 1982, appellant arrived at a pre-determined rendezvous point and had a discussion with Jones which Clifton observed while waiting nearby. While no narcotics sale took place at this time, Jones is alleged to have told Clifton that appellant had assured him [Jones] that a supply of drugs would be available in the very near future.

On May 21, 1982, Jones, Carroll, Clifton and Jones' girlfriend, Cynthia Boswell, drove out to appellant's ranch to purchase a prearranged amount of Dilaudid and marihuana. Jones and Boswell drove in one car, and Clifton and Carroll followed. When they arrived at the ranch, Jones went onto the property to check everything. He returned 20 minutes later and asked for the money. When Clifton refused to allow Jones to go on the property alone with the money, Jones reluctantly allowed Clifton to accompany him. Carroll and Boswell waited at the gate in Clifton's car while Clifton and Jones drove in Jones' car.

When Jones and Clifton reached the house, the car was parked and Jones got out to speak with appellant. Clifton observed appellant with two other persons in the driveway of the ranch house. Clifton saw appellant hand a brown paper sack to Jones. Jones returned to the car and handed the bag to Clifton. Clifton testified the bag contained marihuana. Clifton gave Jones $600.00 with the understanding that Jones would give it to appellant. Jones returned to where appellant was and spoke to him briefly. Clifton also observed appellant handing Jones something from his pocket. Jones then returned to the vehicle and gave a small brown bottle to Clifton. The bottle contained 20 pills, which were later identified as Dilaudid tablets. Clifton then gave $700.00 to Jones, who returned to appellant and gave him the money. After Jones had a short conversation with appellant, he and Clifton left the ranch. Appellant was subsequently arrested.

The State claims in its first ground for review that the Court of Appeals erred in reversing this case because of the trial court's failure to define the term "constructive transfer" in the jury charge.

The trial court instructed the jury in the charge that the term "deliver" meant "... the actual or constructive transfer from one person to another...." In the paragraph applying the law to the facts, the charge permitted conviction of appellant if the jury found that he did "intentionally or knowingly deliver a controlled substance, ... by actual or constructive transfer...."

The term "constructive transfer" is not defined statutorily in Texas. The phrase is in fact part of the definition of the term "deliver" or "delivery." The Texas Controlled Substances Act defines deliver or delivery as "... the actual or constructive transfer from one person to another of a controlled substance ..." See Art. 4476–15, Sec. 1.02(6), V.A.C.S.

The State urges us to hold that the term "constructive transfer" has such a common and ordinary meaning that jurors can be presumed to understand and be able to apply it without a definition from the court. The State cites *Hankins v. State*, 646 S.W.2d 191 at 197 (Tex.Cr.App.1983), opinion on State's Motion for Rehearing), and *Whitson v. State*, 495 S.W.2d 944, 946 (Tex.Cr.App.1973), as authority that Texas does not require that a definition for the terms "circumstantial evidence" or "reasonable doubt" be submitted to the jury.

The Code Construction Act, Sec. 311.-011(a), V.T.C.A. prescribes that words and phrases are to be read in context and construed according to the rules of grammar and common usage. This Act is applicable to the Penal Code, see V.T.C.A., Penal

Code Sec. 1.05, but is not applicable to the Controlled Substances Act. See V.T.C.A. Government Code Sec. 311.002, supra. However, Chapter 312 of the Government Code, which immediately follows the Code Construction Act in the 1986 pamphlet, is specifically applicable to all civil statutes, which includes the Controlled Substances Act. V.T.C.A., Government Code, Sec. 312.-001. The Government Code, Sec. 312.-002(a), prescribes that words be given their ordinary meaning. The Government Code, Sec. 312.002(b), prescribes that words of art, or particular subject matter, are to be used accordingly.

This Court, in *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Cr.App.1980), noted that "constructive transfer" had not been defined in Texas. We went on to follow holdings of courts in other states which specifically defined "constructive transfer". *Rasmussen*, at 209–10. *Rasmussen* has been subsequently cited with approval. In *Davila v. State*, 664 S.W.2d 722, at 724 (Tex.Cr.App.1984) we said:

> "... We followed other jurisdictions and interpreted a constructive transfer to be the transfer of a controlled substance either belonging to the defendant or under his direct or indirect control, by some other person or manner at the instance or direction of the defendant. ..." [citing *Rasmussen*, supra]

See also *Queen v. State*, 662 S.W.2d 338, 340–341 (Tex.Cr.App.1983). Thus, it appears that "constructive transfer" has acquired a particular meaning. However, under the circumstances of this case, we feel any error in not giving a specific definition was harmless.

In the instant case the jury was instructed as to the law of parties and authorized to convict appellant "... if the offense is committed by his own conduct or by the conduct of another ... if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs or aids the person in committing the offense." The term "constructive transfer" appears in the portion of the jury charge which applies the law to the facts of this case. The jury was correctly informed that under the law of parties, appellant could be found guilty for the illegal transfer whether it was made by him directly or by his co-party at his direction or inducement. See V.T.C.A., Penal Code Sec. 7.01. The fact the evidence showed appellant delivered the controlled substances and received the money therefrom by virtue of the acts of a third person, combined with the trial court's instructions concerning the law of parties, was adequate to inform the jury of what was meant by constructive transfer.

We sustain the state's first ground for review.

The State's second ground for review is that the Court of Appeals erred in finding that the trial judge improperly commented on the weight of evidence by instructing the jury that appellant was "criminally responsible" for the conduct of Charles Opie Jones. Jones was also indicted in this matter though tried separately. The evidence in this case shows that Jones acted as a go-between in a narcotics transaction wherein appellant allegedly sold contraband to a police officer. Appellant filed a timely written objection to this charge. Specifically, appellant objected to paragraph VII of the court's charge which was an instruction on the law of parties. Appellant objected to this portion of the charge on the grounds that it "amounts to a comment on the weight of the evidence by instructing the jury that Jimmy Rex Whaley is criminally responsible for the conduct of Charles Opie Jones." The portion of the charge complained of reads as follows:

> "that the defendant, Jimmy Rex Whaley, while acting as a party as that term is hereinbefore defined, by his own conduct, or by the conduct of Charles Opie Jones *for whom he was criminally responsible*, or by both the conduct of Jimmy Rex Whaley and Charles Opie Jones, committed the offense of unlawful delivery of [the controlled substances]. ..." (Emphasis added.)

The trial judge in our State is specifically and statutorily prohibited from commenting in the jury charge on the weight of the evidence. See Art. 36.14, V.A.C.C.P. This article provides in part:

"... the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case; *not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing* the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." (Emphasis added.)

There is no question that under our system of criminal justice the respective roles of the judge and the jury must be maintained in their full integrity. The jury is the trier of fact and the judge is the trier of law who instructs the jury as to the law, which they in turn must apply to the facts. See Art. 36.13, V.A.C.C.P., which holds:

"Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby."

A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. See *Grady v. State*, 634 S.W.2d 316 (Tex. Cr.App.1982); *Tew v. State*, 551 S.W.2d 375, 378 (Tex.Cr.App.1977), and *Marlow v. State*, 537 S.W.2d 8 (Tex.Cr.App.1976).

However, in determining whether harm occurred, this Court has held that the charge should be viewed as a whole and review should not be limited to parts of the charge standing alone. See *Inman v. State*, 650 S.W.2d 417, 419 (Tex.Cr.App. 1983); *Jackson v. State*, 591 S.W.2d 820, 824–825 (Tex.Cr.App.1979) (opinion on Court's Motion for Rehearing); *Smith v. State*, 541 S.W.2d 831, 839 (Tex.Cr.App. 1976), (on state's motion for rehearing), cert. denied, 430 U.S. 937, 97 S.Ct. 1565, 51 L.Ed.2d 783 (1977); *Daniel v. State*, 486 S.W.2d 944, 947 (Tex.Cr.App.1972), cert.

den. 410 U.S. 958, 93 S.Ct. 1433, 35 L.Ed.2d 692 (1973).

The two paragraphs of the charge which precede the paragraph containing the language appellant objected to, read as follows:

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or both. Each party to an offense may be charged with the commission of the offense.

"Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, or aids or attempts to aid the other person to commit the offense. The term 'conduct' means any act or omission and its accompanying mental state."

The following paragraph, in its entirety, reads as follows:

"Now bearing in mind the foregoing instructions if you find from the evidence beyond a reasonable doubt that on or about the 21st day of May, 1982 in Wise County, Texas that the defendant, Jimmy Rex Whaley, while acting as a party as that term is hereinbefore defined, by his own conduct, or by the conduct of Charles Opie Jones *for whom he was criminally responsible,* or by both the conduct of Jimmy Rex Whaley and Charles Opie Jones, committed the offense of unlawful delivery of Hydromorphone in an amount of less than twenty-eight (28) grams *by acting with the intent to promote or assist the commission of said offense by soliciting, encouraging, directing, aiding or attempting to aid, Charles Opie Jones to commit said offense as alleged* in Count III of the Indictment, you will find the defendant guilty of the offense of unlawful delivery of Hydromorphone in an amount of less than twenty-eight (28) grams, but if you do not so find or have

a reasonable doubt thereof you will find the defendant 'Not Guilty.' " (Emphasis added to show portion of charge believed by appellant to be comment on weight of the evidence by the trial judge.) [2]

While the complained of wording in the above paragraph is erroneous and ambiguous, it does not, when read in conjunction with the remainder of the charge, assume the truth of a controverted issue. Since appellant timely objected to the alleged errors in the charge, the proper standard for determining whether reversible error occurred is whether the error was calculated to injure his rights or whether he suffered some harm. *Almanza v. State*, 686 S.W.2d 157, at 171 (Tex.Cr.App. 1985). We find in reading the charge as a whole, reviewing the evidence and arguments of counsel, that appellant was not harmed. We sustain the State's second ground for review.

The judgment of the Court of Appeals is affirmed in part and reversed in part, and the judgment of the trial court is affirmed.

ONION, P.J., concurs in the result.

CLINTON, J., dissents.

TEAGUE, J., dissents to the disposition of the State's ground for review # 2.

---

**2.** The paragraph immediately following this paragraph is the same, but concerns unlawful delivery of marihuana instead of hydromorphone.