Affirmed and Opinion filed December 14, 2004









Affirmed and Opinion filed December 14, 2004.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00553-CR

____________

 

RICHARD LONGORIA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 923,824

 



 

O P I N I O N

Appellant, Richard Longoria, appeals from
his conviction for capital murder.  A
jury found appellant guilty and he was sentenced to imprisonment for life.  On appeal, appellant contends that (1) the
evidence was legally and factually insufficient to support the verdict, (2) the
evidence was insufficient to corroborate accomplice witness testimony, (3) the
court erred in its charge submission, (4) the court erred in refusing to hold a
hearing on his motion for new trial, and (5) the prosecutor made numerous improper
jury arguments.  We affirm.

 








I. 
Background

Appellant was convicted of the capital
murder of Harris County Sheriff’s Deputy Shane Bennett.  Deputies Sean Conrad and Terrence Burk
testified that, in the early morning hours of June 12, 2003, they, along with
Deputy Bennett, responded to a report of a weapon’s disturbance at Maria
Ochoa’s residence.  Hearing noises from
inside the residence that sounded as if someone was being assaulted, the three
deputies entered the home.  In a dark,
interior room, they were fired upon and returned fire.  During the exchange, Deputy Bennett was shot.  He later died of his wounds.  Subsequent ballistics analysis revealed that
the deadly shot was fired from Deputy Conrad’s weapon.  Two of the robbers were also shot and killed
during the exchange of gunfire.

Maria Ochoa testified that, on the morning
of June 12, she was awakened by gun-wielding intruders who corralled everyone in
the house into one room, demanded to know where marijuana was being kept in the
house, and threatened to kill them. 
Ochoa’s husband and her two adult daughters also testified regarding the
events of that morning.  Both daughters
testified that they managed to call 9-1-1 during the encounter.

It is uncontested that appellant was not
present at the Ochoa home during the invasion and shooting.  Christian Gonzales was the chief witness
tying appellant to the crimes committed that morning.  He testified that appellant participated in
conversations planning the home invasion, provided a handgun for use in the
robbery, and served as a lookout for police during the robbery.  Additionally, phone records were introduced
to demonstrate communication between appellant and others involved in the
robbery at the time the robbery was occurring, and appellant’s ex-wife
testified that appellant tried to get her to lie about his whereabouts at the
time of the robbery.

II. 
Sufficiency of the Evidence








In his first issue, appellant attacks the
legal sufficiency of the evidence to support the verdict.  In his third issue, appellant attacks the
factual sufficiency of the evidence.  Since
appellant’s arguments are generally the same under the two issues, we will
discuss them together.  We utilize the
normal standards in conducting our sufficiency review.  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000) (legal sufficiency standards); Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency standards).  We examine the evidence in light of the
elements of the crime as defined by a hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  The correct
charge “would be one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant was tried.”  Id.

A. 
Theory of the Case

The State’s theory of the case was that
appellant was guilty of capital murder in the death of Deputy
Bennett—notwithstanding appellant’s absence from the crime scene and
notwithstanding that a fellow officer actually shot Bennett—because appellant
was criminally responsible for the conduct of his coconspirators in an armed
robbery and the coconspirators caused Bennett’s death when they exchanged
gunfire with the responding deputies.[1]  This theory is based on the law of
conspiracy, set forth in section 7.02(b) of the Penal Code:

[i]f, in the
attempt to carry out a conspiracy to commit one felony, another felony is
committed by one of the conspirators, all conspirators are guilty of the felony
actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have
been anticipated as a result of the carrying out of the conspiracy.








Tex. Pen. Code Ann. § 7.02(b) (Vernon
2003).  It is well-settled in Texas that
a person can be found guilty of capital murder as a conspiring party under
section 7.02(b).  E.g., Johnson v.
State, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992); Cienfuegos v. State,
113 S.W.3d 481, 489-90 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d); see
also Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989) (“the
theory of criminal responsibility set forth in Section 7.02(b) has often been
applied in capital murder cases”).[2]  Thus, under section 7.02(b), if the evidence
demonstrated that appellant conspired with others to commit the robbery of
Ochoa’s residence and that during the robbery, one of the coconspirators
committed capital murder, appellant could be held criminally responsible for
the capital murder if it was in furtherance of the conspiracy’s unlawful
purpose and should have been anticipated.

The Court of Criminal Appeals has held
that a person can be found guilty of capital murder when that person (or an
accomplice) engages in a gun battle with police officers, during which one
officer shoots and kills another officer. 
Dowden v. State, 758 S.W.2d 264, 272‑3 (Tex. Crim. App.
1988) (stating that the defendant caused the officer’s death, even though
officer was shot by fellow officer during gun battle); Blansett v. State,
556 S.W.2d 322, 324‑26 (Tex. Crim. App. 1977) (affirming defendant’s capital
murder conviction based on law of parties); see also Pettigrew v. State,
999 S.W.2d 810, 812-13 (Tex. App.—Tyler 1999, no pet.) (affirming murder
conviction of defendant who shot at a rival gang resulting in an innocent
bystander’s being shot by a member of the rival gang).[3]








Dowden and Blansett were companion cases involving a raid on
a jail facility to free a prisoner.  Dowden, 758 S.W.2d at
271‑2; Blansett, 556 S.W.2d at 324.  During the
raid, Dowden engaged in a gun battle with police officers, and one of the
officers was shot and killed by another officer.  Blansett, 556 S.W.2d at 324.  The court upheld the capital murder
convictions of both Dowden and his accomplice, Blansett.[4] 
The
court reasoned in both cases
that
although an innocent third party may have actually shot the decedent, it was
the conduct of the appellants themselves, as principal and accomplice, that
caused the death, citing Penal Code section 6.04(a).  Tex. Pen. Code Ann. §
6.04(a)[5];
Dowden, 758 S.W.2d at 271‑2; Blansett, 556 S.W.2d at 324.[6]








Thus, under Texas law, appellant could be
found guilty of capital murder if the evidence demonstrated that appellant
conspired with others to commit the robbery of Ochoa’s residence, that during
the robbery, one or more of the conspirators exchanged gunfire with the
responding deputies in furtherance of the conspiracy’s unlawful purpose and
causing Deputy Bennett’s death, and that his death should have been
anticipated.  The jury charge submitted
these elements to the jury, albeit not in perfect form.  However, we analyze the evidence under a
hypothetically correct charge.  Malik,
953 S.W.2d at 240.

B. 
The Evidence

In making his sufficiency arguments,
appellant does not deny that several armed men invaded the Ochoa residence and
subsequently exchanged gunfire with police officers resulting in the death of
Deputy Bennett.  Instead, appellant
centers his attack on the evidence allegedly connecting him with the home
invasion and Bennett’s murder.

Christian Gonzales testified that, on June
11, 2002, he, Daniel Damien, Carlos Ramirez, and Benjamin Gonzales discussed
robbing someone.  They later went to
appellant’s mother’s house and talked about taking sixty pounds of marijuana
from a residence.  Christian testified
that appellant was present during the discussion and that he was “involved in
the conversation.”  The plan called for
Christian to drop the others off near the house and then ride around until they
were ready to be picked up.  Appellant’s
role was to look for police officers while riding around in a car and to call
the others on his cellular telephone. 
Christian also testified that appellant provided a handgun for use in
the robbery.  Christian said that appellant
“[rode] around looking out” and later called him to tell him police were in the
neighborhood.  Cell phone records were
introduced that showed numerous calls were made from appellant’s cell phone to
the cell phones of other participants during and immediately after the home
invasion.  There was also evidence that a
handgun found at the Ochoa residence was of the same caliber as the weapon
Christian said appellant provided.








Appellant first contends that Christian
never testified to any words or acts of appellant that were sufficient to show
agreement or participation in the conspiracy to commit robbery.  Appellant specifically argues that saying
appellant was “involved” in a conversation did not demonstrate agreement.  However, the jury was entitled to consider
the entirety of Gonzales’s testimony and was not required to consider each
statement in isolation.  The jury could
have reasonably deduced that appellant agreed to commit the robbery and was an
active participant based on Christian’s testimony that (1) appellant was
involved in a conversation in which a robbery was planned, (2) the resulting
plan called for appellant to act as lookout, (3) appellant later called and
said police were in the neighborhood, and (4) appellant provided a handgun for
use in the robbery.[7]

Additionally, the telephone records
provide strong support for Christian’s version of events.  Appellant argues that the only thing these
records demonstrate is that calls were made from one phone number to other
numbers.  He asserts that the records do
not prove who made the calls or what the substance was of the conversations.  However, that calls from a person’s cellular
telephone were made by that person is a natural and permissible assumption for
the jury to make.  In his factual
sufficiency arguments, appellant further points out that Roland Garcia
testified that he could have been using appellant’s telephone that night but
did not remember.  This testimony was
particularly vague and does little to negate the clear implications of the
telephone records.








Also pointing to appellant’s guilt was a
statement given to police officers by Garcia, who said that appellant called
him on June 12 and told him “they got two of my people.”  Appellant suggests that this statement could
be merely a reference to the fact the police had killed people with whom
appellant had a relationship (Daniel Damien, for example, was apparently
appellant’s cousin).  It was reasonable,
however, for the jury to have concluded that appellant was referring to the
fact that the police had killed two of his coconspirators.  Also testifying against appellant was his
ex-wife, Esther Tsanais, who stated that appellant called her on June 12 and
asked her to tell the police that he had been with her on the previous night
even though he had not been with her. 
Appellant suggests that this statement does not demonstrate his guilt; rather,
it shows only his attempt to secure an alibi because he had been alone on the
night in question.  The jury could have
inferred guilt from this testimony because an attempt to procure a false alibi
is some evidence of guilt.  See, e.g.,
Huffman v. State, 775 S.W.2d 653, 661 (Tex. App.—El Paso 1989, pet. ref’d).[8]

In sum, there was proof that appellant
conspired with others to commit the robbery of Ochoa’s residence, that during the
robbery, one or more of the conspirators exchanged gunfire with the responding
deputies in furtherance of the conspiracy’s unlawful purpose and causing Deputy
Bennett’s death, and that his death should have been anticipated. The evidence
was legally and factually sufficient to support the verdict.  Appellant’s first and third issues are
overruled.

C. 
Accomplice Corroboration








In his second issue, appellant contends
that the evidence was insufficient to corroborate the testimony of Christian
Gonzales, who was an accomplice witness. 
“A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed;  and the corroboration
is not sufficient if it merely shows the commission of the offense.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 1979).[9]  As discussed above, the main evidence against
appellant was the testimony of Christian Gonzales, who was the getaway driver
for the robbery.  Therefore, he was an
alleged accomplice, and in order for appellant’s conviction to stand, there
must be some other evidence connecting appellant to the crime.

The test for weighing the sufficiency of
corroborative testimony is to eliminate from consideration the accomplice
witness’s testimony and examine the other evidence to see whether there is any
evidence which tends to connect the accused with the commission of the
crime.  Hernandez v. State, 939
S.W.2d 173, 176 (Tex. Crim. App. 1997). 
The corroborative evidence need not be sufficient in itself to establish
guilt, nor must it directly link the accused to the commission of the offense;
the accomplice witness rule is satisfied if there is some non‑accomplice
evidence that tends to connect the accused to the commission of the offense
alleged in the indictment.  Id.  We view the evidence in the light most
favorable to the jury’s verdict.  Gill
v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).

The main pieces of corroborative evidence
in the present case are the cellular telephone records.  Appellant contends that all these records
demonstrate is that a call was made from one phone number to another.  He asserts that the records do not prove the
maker of the calls or their substance. 
There is a natural and permissible assumption that calls from a person’s
cellular telephone were made by that person. 
Read in conjunction with the testimony of Detective Allen Beall, the
records show a flurry of communications and attempted communications between
appellant, Christian Gonzales, and Daniel Damien (one of the home invaders who
was killed at the scene) during the course of the robbery and immediately
thereafter.  The records and testimony
are strong circumstantial evidence that tend to connect appellant to the
crime.  See Nolley v. State, 5
S.W.3d 850, 853 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (stating
corroborative evidence may be circumstantial and it need not directly link
appellant to the crime as long as it tends to link appellant to the
crime).  Appellant points out, however,
that Roland Garcia testified that he could have been using appellant’s
telephone that night but did not remember. 
This testimony was particularly vague and does little to negate the
clear implications of the telephone records.








Two other pieces of evidence are relevant
to our inquiry: (1) appellant’s ex-wife testified that he told her to lie and
say that he was with her on the night in question, and (2) Garcia testified
appellant called him the day after the robbery and told him “they got two of my
people.”  Suspicious statements and
conduct by the accused can be considered in determining whether accomplice
testimony is sufficiently corroborated.  See
Killough v. State, 718 S.W.2d 708, 711 (Tex. Crim. App. 1986); Spratt
v. State, 881 S.W.2d 65, 67 (Tex. App.—El Paso 1994, no pet.).  Although neither statement would necessarily
corroborate the accomplice testimony on its own, each constitutes additional
evidence tending to connect appellant to commission of the crime.[10]  See Munoz v. State, 853 S.W.2d 558,
559 (Tex. Crim. App. 1993) (stating that reviewing court should look to all
facts and circumstances as furnishing corroboration).  Based on the foregoing, we hold that the
accomplice testimony of Christian Gonzales was sufficiently corroborated by
other evidence tending to connect appellant to the charged offense.  Appellant’s second issue is overruled.

III. 
Charge Issues








In his fourth issue, appellant argues that
(1) certain language in the charge constituted a comment on the weight of the
evidence and (2) the charge was disjointed and confusing.  Regarding the first contention, appellant
specifically asserts that the trial court erred in including the language
“and/or Sean Conrad” in the application paragraph because such language
constituted a comment on the weight of the evidence.[11]  It is error for a court to comment in the
charge on the weight of the evidence.  Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon Supp. 2004); Giesberg v. State, 984 S.W.2d 245, 250 (Tex. Crim.
App. 1998).  Appellant argues that,
because the application paragraph failed to inform the jury how appellant could
be held criminally responsible for Conrad’s actions in shooting Bennett,
including Conrad’s name misled the jury into thinking the court was charging
them that appellant was necessarily responsible for Conrad’s actions.

The jury charge in criminal trials
includes an abstract portion, defining concepts and terms, as well as
application paragraphs, applying the law to the facts and asking ultimate
guilt/innocence questions of the jury.  See
Plata v. State, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996), overruled
on other grounds, Malik v. State, 953 S.W.2d 234, 239 (Tex. Crim.
App. 1997); Degrate v. State, 86 S.W.3d 751, 752-53 (Tex. App.—Waco
2002, pet. ref’d).  Generally, when a
defendant is tried under a vicarious criminal responsibility theory, the
application paragraph must either (1) specify all conditions that must be met
for conviction on that basis or (2) refer to instructions in the abstract
portion pertaining to criminal responsibility for another’s conduct.  See Plata, 926 S.W.2d at 304; Degrate,
86 S.W.3d at 753.

Appellant complains that the application paragraphs
in the present case did neither. 
However, the charge before us contains the following paragraph, which is
clearly written as an application paragraph although it appears in the abstract
portion of the charge:








[I]f you find from
the evidence beyond a reasonable doubt that the death of Shane Bennett would
not have occurred but for the [appellant’s] conduct; or, but for the conduct of
another person, namely, Benjamin Gonzalez and/or Christian Gonzales and/or
Carlos Ramirez and/or Daniel Damien and/or Sean Conrad, for whom [appellant] is
criminally responsible, . . . you will find the defendant criminally
responsible.  Unless you so find beyond a
reasonable doubt, or if you have a reasonable doubt thereof, you will find the
defendant not criminally responsible and say by your verdict “Not Guilty.”

Thus, contrary to appellant’s assertion, by including
the phrase “for whom [appellant] is criminally responsible” the court did refer
to the abstract definitions of criminal responsibility in the application
paragraphs, albeit out of place.[12]  Thus, appellant’s first argument is without
merit.

In his second argument under this issue,
Appellant contends that the charge was in error because it was disjointed and
potentially confusing to jurors.  With
this we agree.  The seventeen‑page
charge included every conceivable theory for conviction, whether as a principal
or as a party, regardless of whether the State argued the theory or there was
any evidence to support its submission. 
Further, the abstract and application portions do not appear to be
ordered in a rational manner.  “Jurors
should not be required and expected, and they are not under our law, to
put together pieces of what may appear to them to be a jigsaw puzzle to
determine which elements must be proved in order to find that the defendant
committed the offense which he was charged with committing.”  Doyle v. State, 631 S.W.2d 732, 737 (Tex.
Crim. App. 1982) (emphasis in original); see also Degrate, 86 S.W.3d at
753 (quoting Doyle).  Accordingly,
we find the trial court erred in submitting this charge.








However, appellant did not object on this
basis before the trial court.  See
Tex. R. App. P. 33.1(a).[13]  When a party fails to properly object to
alleged charge error, the proper standard for determining whether reversible
error occurred is whether the party suffered “egregious harm.”  Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985).  In making this
determination, we examine the charge in its entirety, the state of the
evidence, the argument of counsel, and any other relevant information in the
record.  Id.  Here, the charge contained comprehensive
instructions regarding when one person can be held criminally responsible for
the conduct of another.  Furthermore, the
charge contained the misplaced application paragraph discussed above, which
indicated that the jury could not convict appellant unless it found him
criminally responsible under the instructions given.  The evidence, detailed above under issues one
through three, supported the conclusion that appellant was guilty, but only by
application of certain of the vicarious criminal responsibility theories
contained in the charge.  Lastly, the
prosecutor’s closing argument succinctly traced the steps required for
appellant to be found guilty of capital murder, including explicit reference to
the abstract and application sections as well as to the theories of criminal
responsibility relating to conspirators. 
Under these circumstances, we find that appellant was not egregiously
harmed by the alleged charge error.  Id.  Appellant’s fourth issue is overruled.

In his fifth issue, appellant contends
that the trial court improperly commented on the weight of the evidence by
instructing the jury to find him criminally responsible for the acts of
others.  This argument is tied to the
misplaced application paragraph, set out above, in which the court instructed
that appellant could not be held criminally responsible for the death of Shane
Bennett unless it would not have occurred but for appellant’s conduct or the
conduct of another person (including Sean Conrad) for whom appellant was
criminally responsible.  Appellant here
contends that the phrasing of the instruction left the jury with no conclusion
but that appellant was criminally responsible for Conrad’s conduct.  We do not read the paragraph in that
manner.  The phrase “for whom [appellant]
is criminally responsible” is clearly tied to the instructions on criminal
responsibility.








In Whaley v. State, 717 S.W.2d 26
(Tex. Crim. App. 1986), the court addressed a very similar issue to the one
presented here.  The court concluded
that, although the language “for whom he was criminally responsible” was
“erroneous and ambiguous,” it did not comment on the weight of the evidence given
the presence of adjoining paragraphs defining when someone can be criminally
responsible for another’s conduct.  Id.
at 31-33.  As in Whaley, the
charge here contained adjoining paragraphs explaining when someone could be
held responsible for another’s conduct.[14]  Accordingly, we find the charge was not a
comment on the weight of the evidence.

Furthermore, even if we consider this
submission error, appellant clearly did not preserve the issue by a timely and
sufficiently specific objection.  Tex. R. App. P. 33.1(a)(1).[15]  Thus, again, reversal would be required only
on a finding of egregious harm.  Almanza,
686 S.W.2d at 171.  For the same reasons
discussed in the harm analysis under issue four, we find that the alleged error
would not have been egregiously harmful to appellant.  See Whaley, 717 S.W.2d at 33.  Accordingly, appellant’s fifth issue is
overruled.

IV. 
Motion for New Trial








In his sixth issue, appellant contends
that the trial court abused its discretion in refusing to hold a hearing on his
motion for new trial.  See Landers v.
State, 110 S.W.3d 617, 626 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d) (stating that a trial court abuses its discretion in failing to hold a
hearing when an accused presents a motion for new trial raising matters that
could entitle him or her to relief and that are not determinable from the
record).  The State counters that
appellant waived any right to a hearing by failing to timely present the motion
to the trial court.  See Tex. R. App. P. 21.6 (requiring
presentment within ten days of filing); Landers, 110 S.W.3d at 626
(holding that failure to timely present motion waived right to hearing).  To prove presentment, the record must contain
more than just proof that the motion was timely filed; it must also contain proof
that the movant actually delivered the motion to the trial court or that the
motion was otherwise brought to the trial court’s attention.  Carranza v. State, 960 S.W.2d 76, 79
(Tex. Crim. App. 1998);  Landers,
110 S.W.3d at 626.








We note that the record contains a “Notice
of Presentment of Motion for New Trial.” 
This document requested that the court permit presentment of the motion
to the court coordinator.[16]  However, the record is devoid of any showing
that appellant actually presented the motion for new trial (or the “Notice of
Presentment”) to either the trial court or the court coordinator.  There is no ruling on the motion or the
notice, no signature or notation on the motion or any proposed order, and no
hearing date noted on the docket sheet or on any type of form.  See Carranza, 960 S.W.2d at
79-80 (providing nonexclusive list of methods of proof); Estrella, 82
S.W.3d at 486 (finding that hearing date in “case setting form” was sufficient
proof of presentment to court coordinator). 
Although the final entry on the court’s docket sheet states “Mo. for New
Trial filed,” this notation is not sufficient to show presentment.  Cf. Daniels v. State, 63 S.W.3d 67, 69
(Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (holding that docket entry
stating “Motion for New Trial was presented to the Court” was sufficient to
show presentment)[17];
Enard v. State, 764 S.W.2d 574, 575 (Tex. App.—Houston [14th Dist.]
1989, no pet.) (holding motion was not timely presented when nothing in record
indicated court was on notice of request for hearing).[18]  A trial court cannot abuse its discretion by
denying a motion for new trial by operation of law when the motion was not
timely presented.  Birdwell v. State,
996 S.W.2d 381, 384 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  Accordingly, appellant’s sixth issue is
overruled.

V. 
Closing Argument

In his seventh through thirteenth issues,
appellant attacks various aspects of the prosecutor’s closing argument.  There are four permissible areas of argument
for prosecutors: (1) summation of the evidence, (2) reasonable deductions from
the evidence, (3) responses to argument by defense counsel, and (4) pleas for
law enforcement.  Wesbrook v. State,
29 S.W.3d 103, 115 (Tex. Crim. App. 2000). 
The Court of Criminal Appeals has recently explained that when the trial
court instructs the jury to disregard improper argument, the proper analysis of
the instruction’s efficacy is not harmless error, but abuse of discretion.  Hawkins v. State, 135 S.W.3d 72, 76-77
(Tex. Crim. App. 2004).  This analysis
focuses on (1) the “severity of the misconduct” (also defined as “the magnitude
of the prejudicial effect of the prosecutor’s remarks”), (2) the curative
measures taken by the trial court, and (3) the certainty of the conviction
absent the conduct.  See id. at
77.[19]

Appellant first contends that the
prosecutor commented on appellant’s failure to testify when he said “[t]he
facts and the law in this case are almost uncontroverted.  Mr. Longoria and [defense counsel], none of
them contest the fact that a terrible aggravated robbery—” When defense counsel
objected to the statement, the trial court sustained the objection and
instructed the jury to disregard but refused to declare a mistrial.








It is well established that
“[p]rosecutorial comment that refers to an accused’s failure to testify
violates the accused’s Fifth Amendment right against compelled self‑incrimination.”
 Canales v. State, 98 S.W.3d 690,
695 (Tex. Crim. App. 2003) (citing
U.S. Const. amend. V); see
also Tex. Const. art. I, §
10; Tex. Code Crim. Proc. Ann.
art. 38.08 (Vernon 1979).  A prosecutor’s
statement that the evidence is “uncontroverted” or “not contested” has been
interpreted as a comment on the failure to testify.  See, e.g., Angel v. State, 627
S.W.2d 424, 425-26 (Tex. Crim. App. 1982).

In order to
constitute a violation of the . . . privilege against self-incrimination, the language
must be either manifestly intended, or of such a character that the jury would
naturally and necessarily take it to be a comment on the defendant’s failure to
testify.  The challenged comment must be
viewed from the standpoint of the jury and the language must be more than an
implied or indirect allusion to defendant’s silence.  Further, if the remark called the jury’s
attention to the absence of evidence that only the testimony from the appellant
could supply, the conviction must be reversed.

Id. at 426; see also Wead v. State, 129 S.W.3d
126, 130 (Tex. Crim. App. 2004).

Even if we assume that the statements were
an improper reference to the failure to testify, we find the error to have been
cured.  The trial court sustained defense
counsel’s objection and instructed the jury to disregard the statements.[20]  In most circumstances, an instruction to
disregard improper argument is considered a sufficient response by the trial
court.  See Wesbrook, 29 S.W.3d at
115; Phillips v. State, 130 S.W.3d 343, 355-56 (Tex. App.—Houston [14th
Dist.] 2004, no pet. h.).  This is true
even for comments on the defendant’s failure to testify, except in the most
blatant cases.  Moore v. State,
999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999). 
Given the nature of the prosecutor’s statements and the circumstances of
this case discussed above, we do not believe that the statements were so
blatant as to render the instruction to disregard ineffective.  See id. at 406.  Accordingly, appellant’s seventh issue is
overruled.








Appellant next contends that the
prosecutor personally attacked defense counsel when he stated: “Don’t let
[defense counsel] put a guilt trip on you like he tried to put on Sean Conrad
and Terry Burks.  I apologize to every
man and woman in uniform in this courtroom for the comments [defense counsel]
made about Mr. Burks—.”  These comments
were apparently in response to statements in defense counsel’s closing, wherein
he repeatedly argued that officers, including Conrad and Burks, made mistakes
at the crime scene.  A prosecutor has
some leeway to respond to particular points made in defense counsel’s closing.  See Wesbrook, 29 S.W.3d at 115.

The trial court sustained defense
counsel’s objection and instructed the jury to disregard.  Except in extreme situations, a curative
instruction is a sufficient curative measure, and no mistrial is necessary.  Hawkins, 135 S.W.3d at 77.  Beyond stating that the comments were “so
inflammatory, improper, and prejudicial” that the instruction could not cure
the harm, appellant offers no analysis of the trial court’s alleged abuse of discretion
in refusing to declare a mistrial. 
Because the prosecutor’s statement was essentially a response to defense
arguments, we do not consider it as particularly offensive or flagrant.  See Wesbrook, 29 S.W.3d at 116.  The trial court did not abuse its discretion
in refusing a mistrial.  Accordingly,
appellant’s eighth issue is overruled.

Appellant next complains about the
following argument:

[Prosecutor]:          You know, I always get worried
whenever lawyers are up here talking and start wrapping themselves up in the
flag.  I think something—”

[Defense
Counsel]: Objection.  Improper comment.  I object.

The Court:    Overruled.

[Prosecutor]:          I don’t mean any disrespect with [defense counsel].  I’m just saying every time I hear someone
wrapping themselves up in the flag I think what are they trying to hide?  They’re trying to wrap up Richard Longoria in
the flag . . . .  It’s offensive to wrap
himself up in the flag of this country and ask you to forgive him his sins
because it’s the right thing to do under the flag. . . .  I suggest to you that flag has nothing to do
with Richard Longoria.








Appellant contends this argument (1)
constituted an improper personal attack on defense counsel, (2) invited jurors
to speculate on what the defense might be hiding, and (3) urged jurors to
ignore their oaths and find appellant was not entitled to the protection of the
flag or the Constitution.  However, the
only portion of the argument to which an objection was made, the first
sentence, does none of these things. 
During defense counsel’s closing argument, he made references to the
flag and the Iraq War (Operation Iraqi Freedom was ongoing at the time of
trial), and he stated that whether the jury found appellant guilty or not
guilty they would have done a “true and American thing either way.”  Thus, the prosecutor’s statement suggesting
that defense counsel had “wrapped” himself in the flag was a permissible
response to defense counsel’s argument.   See Fuentes, 991 S.W.2d at 274.  The remainder of the comments that appellant
complains about on appeal were not objected to in the trial court.  Thus, no arguments concerning these comments
were preserved for appeal.  See Tex. R. App. P. 33.1(a); Mathis v.
State, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002).  Accordingly, appellant’s ninth issue is overruled.

Appellant next asserts error in the trial
court’s refusal to declare a mistrial after the prosecutor suggested appellant
had “manipulate[d] the strings from a safe distance” and “if you let him walk
out of here a free man . . . he’s going to find him more crash dummies—.”  Defense counsel objected, and the trial court
sustained the objection and instructed the jury to disregard but denied a
mistrial.  On appeal, appellant contends
that the argument was improper because (1) it suggested appellant earned his
livelihood committing the type of offense for which he was on trial, (2) it
inferred appellant had committed other similar crimes, and (3) it encouraged
the jury to speculate that the accused would continue his illegal activity.








Prior to the quoted comments above, the
prosecutor had made reference to appellant’s being “the bossman” and to the men
who physically had carried out the robbery as working for appellant.  Although these earlier statements could
arguably be interpreted to mean that appellant had previously engaged in such
illegal activity, defense counsel did not object to them.  Thus, any alleged error associated with them
has not been preserved for appellate review. 
See Tex. R. App. P. 33.1(a);
Mathis, 67 S.W.3d at 926-27.  The
only objection was to the argument suggesting that if appellant was acquitted
he might commit another crime.  Such
argument, however, falls within the realm of permissible pleas for law
enforcement.  Pineda v. State, 2
S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d); Moyer v.
State, 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref’d); Long
v. State, 820 S.W.2d 888, 895 (Tex. App.—Houston [1st Dist.] 1991, pet.
ref’d).  Accordingly, we find the
objected-to statement was not improper. 
Appellant’s tenth issue is overruled.

Appellant next complains about the
prosecutor’s suggestion that members of appellant’s family hid a witness.  This issue concerns the following exchange:

[Prosecutor]:          And how dare these lawyers accuse me
of hassling [appellant] by having his children come to a Grand jury [sic].  We had the family come to Grand Jury, in
response to his argument, Your Honor, because we had a good reason to believe
the Longorias were hiding Mark Zimmerman—

[Defense Counsel]: Objection.  Outside the scope of the record.

The Court:    Overruled.

[Prosecutor]:          Where was Mr. Zimmerman? 
Let him take the stand to answer some questions, and he isn’t here.  That’s why we used the Grand Jury because it’s
the only way we can try to get people down here to give you all the evidence we
can.  And we didn’t bring his children in
the in the [sic] Grand Jury either.

Appellant contends that the trial court erred in
overruling his objection because the comments were outside the record.[21]  See, e.g., Jones v. State, 38 S.W.3d
793, 796 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (holding argument
outside the record was improper).








Under the invited argument rule, a
prosecutor is entitled to respond to defensive argument that goes outside the
record, so long as the prosecutor’s argument does not stray beyond the scope of
the invitation.  Wilson v. State,
938 S.W.2d 57, 60 (Tex. Crim. App. 1996); Drew v. State, 76 S.W.3d 436,
462-63 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  During his close, defense counsel suggested
that prosecutors had brought members of appellant’s family before the grand
jury to intimidate them because the prosecutors otherwise had no evidence
against appellant.[22]  The objected‑to remarks of the
prosecutor were properly responsive to this defensive argument because they
attempted to explain the real reason why family members were brought before the
grand jury.  Accordingly, the trial court
did not err in overruling the objection. 
Appellant’s eleventh issue is overruled.

Appellant next complains about the
prosecutor’s comments suggesting that appellant’s ex-wife was brought before
the grand jury to give her a cover for cooperating with the prosecution.[23]  Appellant contends that the statements
improperly raised matters outside the record because they suggested that he had
threatened his ex-wife.  Again, however,
this explanation of why appellant’s ex-wife was brought before the grand jury
constituted a proper response to defense counsel’s argument that the State
called her in to intimidate her.  See
Wilson, 938 S.W.2d at 60; Drew, 76 S.W.3d at 462-63.








Additionally, shortly after the defense
objection was sustained, the prosecutor went on to state “she’s not afraid of
law enforcement. . . .  She’s afraid of
that man, [appellant].  She’s afraid of
what he will do. . . .  That’s an honest
woman.  That’s a courageous woman.”  Defense counsel did not object to these
statements.  Where the objected‑to
argument is repeated without objection, no reversible error exists.  McFarland v. State, 845 S.W.2d 824,
840 (Tex. Crim. App. 1992); Moyer v. State, 948 S.W.2d 525, 531 (Tex.
App.—Fort Worth 1997, pet. ref’d). 
Accordingly, appellant’s twelfth issue is overruled.

Lastly, appellant contends that the
cumulative effect of the prosecutor’s improper arguments denied him a fair and
impartial trial.  As discussed under the
prior issues, several of appellant’s assigned errors were cured by jury
instructions, while others were not preserved by timely objection.  Under this issue, appellant cites numerous
other instances of improper argument, but a review of the citations reveals
that no objections were made. 
Accordingly, no arguments were preserved for appellate review in regard
to these statements.  See Wead,
129 S.W.3d at 130 (holding court of appeals erred in considering appellate
issue that argument commented on the failure to testify when such objection was
not made in the trial court).  As stated,
to the extent any prosecutorial argument was improper, we find that the trial
court’s instructions to disregard were sufficient; therefore, there was no
abuse of discretion in denying a mistrial. 
See Hawkins, 135 S.W.3d at 77; Wesbrook, 29 S.W.3d at
116.  Thus, appellant has failed to
demonstrate that the cumulative effect of any improper argument deprived him of
a fair and impartial trial.  Appellant’s
thirteenth issue is overruled.

The trial court’s
judgment is affirmed.

 

 

/s/        Adele
Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed December 14, 2004.

Panel consists of
Chief Justice Hedges and Justices Fowler and Seymore.

Publish — Tex. R. App. P. 47.2(b).

 











[1]  The charge
authorized the jury to convict appellant under three theories of capital
murder:  (1) as a principal, (2) as a
party under section 7.02(a)(2) of the Texas Penal Code, or (3) as a conspirator
under the law of parties as contained in Penal Code section 7.02(b).  Tex.
Pen. Code Ann. § 7.02(a)(2), (b) (Vernon 2003).  The State’s proof and argument were focused
on the third theory.





[2]  Note, however,
that the death penalty cannot be imposed on someone who was only a party to
murder.  Johnson, 853 S.W.2d at 535 (citing Cuevas v. State, 742 S.W.2d 331, 343
(Tex. Crim. App. 1987)).





[3]  It should be
noted that the court in Pettigrew based its decision on a theory of
transferred intent.  999 S.W.2d at 812-13.





[4]  In Blansett,
the court quoted the California Supreme Court as stating:

 

When the defendant or his accomplice . . .
intentionally commits an act that is likely to cause death, and his victim or a
police officer kills in reasonable response to such act, the defendant is
guilty of murder. . . .  Thus, the
victim’s self‑defensive killing or the police officer’s killing in the
performance of his duty cannot be considered an independent intervening cause
for which the defendant is not liable, for it is a reasonable response to the
dilemma thrust upon the victim or the policeman by the intentional act of the
defendant or his accomplice.

 

556 S.W.2d at 325‑26 (quoting People v.
Gilbert, 408 P.2d 365, 373 (1965), rev’d on other grounds, 388 U.S.
263 (1967)).





[5]  Section
6.04(a) contains the generally applicable definition of “causation” for the
Penal Code.  It states

 

A person is criminally responsible if the result would
not have occurred but for his conduct, operating either alone or concurrently
with another cause, unless the concurrent cause was clearly sufficient to
produce the result and the conduct of the actor clearly insufficient.

 

Tex. Pen. Code Ann. § 6.04(a). 
This language was included almost verbatim in the jury charge before us.





[6]  Appellant argues that he could not
be held responsible under Blansett because he was not present at the
time Bennett was killed.  However, a
defendant need not have been physically present in order to be held responsible
as a party, either under section 7.02(a)(2), as alleged in Blansett, or
under section 7.02(b), as alleged here.  See
Otto v. State, 95 S.W.3d 282, 284-85 (Tex. Crim. App. 2003) (affirming
conviction as a party under section 7.02(a)(2), even though defendant not
present at scene of crime); Cienfuegos, 113 S.W.3d at 489-90 (affirming
capital murder conviction based on section 7.02(b) even though defendant was
not present at scene of the crime); Hernandez v. State, 52 S.W.3d 268,
278-79 (Tex. App.—Corpus Christi 2001, no pet.) (holding that presence at the
scene is not required under section 7.02(a)(2)); Pike v. State, 758
S.W.2d 357, 362 (Tex. App.—Waco 1988) (holding defendant’s absence at the scene
of the crime did not absolve him of criminal liability under section 7.02(b)), vacated
on other grounds, 772 S.W.2d 130 (Tex. Crim. App. 1989).  Further, although the charge in Blansett
apparently required that the jury find the defendant was present at the scene
in order to find he was a party to the crime, the Court of Criminal Appeals did
not expressly base its decision on that point. 
556 S.W.2d at 326 n.5.





[7]  The testimony that appellant
provided a handgun also supports the jury’s conclusion that Deputy Bennett’s
death should have been anticipated as a result of the robbery.  See Tippitt v. State, 41 S.W.3d
316, 324-25 (Tex. App.—Fort Worth 2001, no pet.) (listing cases holding that
proof of knowledge that a gun would be used in a robbery supported finding that
resulting murder should have been anticipated).  Appellant suggests that Christian did not testify
that appellant provided the weapon after the group disclosed their
plans; however, Christian clearly stated that appellant provided the weapon for
use in the robbery.  Appellant further emphasizes that ownership
of the gun was not independently established, and none of the tests conducted
on the gun connected it to him.  However,
neither point necessarily diminishes the strength of Christian’s testimony. 
Even if appellant did not own the gun, he still could have provided it
for the robbery, and after the weapon was used by another person in a gun
battle, it is not surprising that forensics tests could no longer connect
appellant with it.





[8]  In his factual
sufficiency argument, appellant additionally points to portions of testimony
from Garcia (an associate of appellant), Carlos Baeza (a friend of appellant’s
family), and Josephine Cardenas (appellant’s sister) as casting doubt on
Gonzales’s testimony.  However, as fact
finder, it is generally the jury’s duty to reconcile conflicts in the evidence
and to determine the weight and credibility to be assigned to testimony.  Santos v. State, 116 S.W.3d 447,
459-60 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).  We will not reverse the jury’s findings on
the basis of these partisan witnesses’ testimony.





[9]  The jury was
charged in accordance with article 38.14.





[10]  It is less
likely that an innocent person would feel the need to solicit a false alibi
than would a person who was involved in the crime.  See, e.g., Huffman, 775 S.W.2d at
661.  Also, under the circumstances,
appellant’s statement that “they got two of my people” suggests that he was
involved with the people and the crime. 
Appellant cites $9,050.00 in U.S. Currency v. State, 874 S.W.2d
158, 162 (Tex. App.—Houston [14th Dist.] 1994, writ denied), for the
proposition that when evidence gives rise to two opposing inferences, neither
of which is more probable, neither fact can be inferred from that
evidence.  Although the cited testimony
may be susceptible of two opposing inferences, the inference tending to link
appellant to commission of the crime is stronger in each instance.





[11]  Appellant
complains of the following passage:

 

. . . or if
you find from the evidence beyond a reasonable doubt that the defendant,
Richard Longoria, and Benjamin Gonzalez and/or Christian Gonzales and/or Carlos
Ramirez and/or Daniel Damien entered into an agreement to commit the felony
offense of robbery of Maria Ochoa, and pursuant to that agreement, if any, they
did carry out their conspiracy and that in Harris County, Texas, on or about
the 12th day of June, 2002, while in the course of committing such robbery of
Maria Ochoa, Benjamin Gonzalez and/or Christian Gonzales and/or Carlos Ramirez
and/or Daniel Damien and/or Sean Conrad intentionally caused the death
of Shane Bennett by shooting Shane Bennett with a deadly weapon, namely a
firearm, and that the death of Shane Bennett was an offense that the defendant
should have anticipated as a result of carrying out the conspiracy, then you
will find the defendant guilty of capital murder, as charged in the indictment.
(emphasis added).





[12]  It should also
be noted that other portions of the application paragraphs referred to other
abstract instructions regarding criminal responsibility, including those
relating to conspiracy.  The language
used by the court to refer to the criminal responsibility instructions is the
subject of appellant’s fifth issue and is discussed in more detail below.





[13]  Appellant
objected to the inclusion of the “and/or Sean Conrad” language on the ground
that it constituted a comment on the weight of the evidence.  However, the only explanation appellant
offered was to cite to a wholly inapplicable civil case on charge error: Stern
v. State ex rel Ansel, 869 S.W.2d 614 (Tex. App.—Houston [14th Dist.] 1994,
writ denied).  Appellant made no
reference to criminal responsibility or the need to reference criminal
responsibility in the application paragraph or the failure of the paragraph to
refer to the instructions.  Nor did
appellant suggest the charge as proposed was confusing or out of order.
Appellant’s requested application paragraph was identical to the submitted
paragraph except for the deletion of the “and/or Sean Conrad” language.





[14]  Appellant
tries to distinguish Whaley on the ground that the objectionable
language in that case came after the definitions, whereas the language in this
charge comes before the definitions. 
This argument is a distinction without a difference.  The key fact is that the phrase “criminally
responsible” is clearly and adequately defined in the charge.  See Plata, 926 S.W.2d at 304; Whaley,
717 S.W.2d at 32-33.  It is an additional
factor worth considering that the definitional paragraph is adjacent to the
paragraph of which appellant complains.  Whaley,
717 S.W.2d at 32-33.  It is of no
consequence that the one paragraph came before or after the other.





[15]  Appellant
argues that he preserved this argument by objecting to the “and/or Sean Conrad”
language in another portion of the charge. 
However, we find that objecting to certain language in one portion of a
seventeen‑page charge does not preserve an objection to different
language in another portion of the charge.





[16]  The First Court of Appeals has held
that the presentment requirement can be met by presentment to the court
coordinator.  See Butler v. State,
6 S.W.3d 636, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d); see also
Estrella v. State, 82 S.W.3d 483, 485-86 (Tex. App.—San Antonio 2002, pet.
dism’d) (following Butler).





[17]  The docket
statement in the present case indicates only that the motion was filed;
whereas, in Daniels, the statement indicated the motion “was presented
to the Court.”  63 S.W.3d at 69 (emphasis
added).  This is a key, indeed
controlling, distinction between the two cases.





[18]  It should be
noted that this final docket entry was not signed by the judge, as other docket
entries were, and the handwriting appears different from that in the passages
signed by the judge.  We cannot determine
whether the judge himself made the entry.





[19]  Although the Hawkins
case involved prosecutor argument in the punishment phase, its general
principles appear equally applicable to argument during the guilt/innocence
phase.





[20]  The jury
charge also instructed the jury that it could not consider for any purpose
appellant’s decision not to testify.





[21]  Appellant also
references a subsequent comment by the prosecutor about hiding a witness, but
this comment occurs three pages later in the record, and no objection was
lodged against it.  Accordingly, no
argument regarding that statement was preserved for review.  See Tex. R. App. P. 33.1(a);
Mathis, 67 S.W.3d at 926-27.





[22]  A portion of
defense counsel’s statements reads as follows:

 

[I]t’s the
day before trial and you wonder how are we going to convince a jury Richard
Longoria is guilty?  We have no
evidence.  Let’s bring some people that
will be intimidation [sic].  You want
your government working for you.  They
subpoenaed his kids . . . his ex-wife, his mother, his current wife all to the
Grand Jury. . . . 





[23]  Specifically, appellant references
the following statements: “Before we had her in the Grand Jury, she came down
with her lawyer and told us what happened. 
And, in fact, we took her in the Grand Jury to give her some coke [sic]
so Longoria wouldn’t know she was cooperating with the detectives—.”  Appellant objected, the court sustained the
objection and instructed the jurors to disregard, but the court refused to
declare a mistrial.