COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                      NOS.   2-04-422-CR

2-04-423-CR

 

 

BOBBY LEE
VICKERY                                                           APPELLANT

 

                                                   V.

 

THE STATE OF
TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction








The State charged
Appellant Bobby Lee Vickery with indecency with a child by contact in two
separate indictments.  A jury convicted
Vickery in both causes, and the trial court sentenced him to twenty-five years= confinement in cause number 0890792D and thirty years= confinement in cause number 0890810D.  Vickery raises six points, challenging
various rulings made during trial.  We
will affirm.

II.  Factual Background

During the summer
and fall of 2002, two brothers, J.R.T. and J.D.T., lived in Tarrant County with
their mother, father, and their two younger siblings.  J.R.T. was ten years old and J.D.T. was eight or nine years
old.  Vickery formed a friendship with
the family that summer and often spent time at the boys= home performing automotive work with their
father.  Vickery occasionally took
J.R.T., J.D.T., and their two siblings for rides in his own truck, usually
after sunset.  During these brief trips,
Vickery allowed J.R.T. and J.D.T. to sit on his lap one at a time and to hold
the steering wheel while he  drove.  When the boys would place their hands on the
steering wheel, Vickery would reach down and grab the boys= penises over their clothing for a few seconds.  Vickery touched the boys in this manner
between ten and fifteen times each, but neither J.R.T. nor J.D.T. saw Vickery
touch the other.  J.D.T. further
testified that Vickery touched his penis once after he and his family had moved
to his grandmother=s house.








J.R.T. and J.D.T.
eventually told their mother, Teresa McGinnis, about Vickery=s conduct, and she notified the Tarrant County Sheriff=s Office. McGinnis confronted Vickery with the boys= accusations. 
Vickery responded that he did not touch the boys in that manner, but if
he did, he was drunk at the time. 
Vickery gave a non-custodial, oral statement to police in which he
acknowledged that the boys would sometimes knock his hands off of the steering
wheel, causing his hands to fall Adown
there.@ 

III.  Request for Election

In his first point,
Vickery argues that the trial court erred by refusing to require the State to
elect the particular conduct that it would rely upon for conviction at the
close of its case-in-chief.  The State
contends that Vickery invited any error. 
The trial court in its discretion may order the State to make its
election at any time prior to the resting of the State=s case-in-chief. 
O=Neal v. State,
746 S.W.2d 769, 772 (Tex. Crim. App. 1988). 
However, once the State rests its case-in-chief, in the face of a timely
request by the defendant, the trial court must order the State to make its
election.  Id.  Failure to do so constitutes error.  Id.

Here, Vickery filed
a motion to require an election by the State. 
Vickery=s motion alleged that although each indictment charged
that he committed a particular offense Aon
or about September 1, 2002," he had received notice from the State that it
would offer evidence of multiple incidents of the same conduct as that alleged
in the indictment.  Accordingly, Vickery=s motion for an election requested that he 








be given notice in writing prior to trial of
the particular incident upon which the State will elect to proceed.  In the alternative, the Defendant moves the
Court to require the State, at the close of its case in chief, to elect
the particular act or conduct and the particular date thereof upon which the
State relies upon for conviction.  In
the alternative, the Defendant moves the Court, at the close of the evidence,
to require the State to elect the particular date and incident of conduct that
it relies upon in seeking the conviction of the Defendant.  [Emphasis added.]

 

In light of the above-italicized
language in Vickery=s motion, the State contends that Vickery=s motion invited the trial court to require the State
to make an election at any one of three points, either prior to trial, at the
close of its case-in-chief, or at the close of the evidence.  The State contends that Vickery cannot be
heard to complain because the trial court complied and adopted his third
proposed option.  Vickery points out that
he nonetheless objected to the trial court=s
refusal to require the election after the close of the State=s evidence.[2]








The State concluded
its case-in-chief and rested.  Outside
the presence of the jury, Vickery verified for the record his desire to not
testify, and defense counsel indicated that Vickery would rest in front of the
jury behind the State. The prosecutor then requested to re-open so that the
trial court could take judicial notice of the dates the indictments were
returned in each case; defense counsel did not object.  After, the jury returned to the courtroom,
the State re-opened and requested the trial court to take judicial notice as requested,
which the trial court did, and both sides announced that they rested and
closed.     The State=s electionCas
indicated by the prosecutor during the discussion outside the presence of the
jury before it re-openedCis set out in the trial court=s charge to the jury in each cause.  The trial court=s charge to the jury in cause number 0890792D states,

The
State has elected to proceed on the conduct described by [J.D.T.] as the first
time the defendant is alleged to have touched the genitals of [J.D.T.] by
grabbing them with his hand occurring while [J.D.T.] resided at the residence
on Jet Street and was 8 or 9 years of age.

The trial court=s
charge to the jury in cause number 0890810D states,

 

The State has
elected to proceed on the conduct described by [J.R.T.] as the first time the
defendant is alleged to have touched the genitals of [J.R.T.] by grabbing them
with his hand occurring while [J.R.T.] resided at the residence on Jet Street
and was about 10 years of age.

 

Except for his request for a
limiting instruction, Vickery=s counsel
asserted no other objections to the charge.








The record clearly
demonstrates that, although the trial court ruled that the State would not be
required to make an election until the conclusion of the evidence, the State in
fact made its election at the conclusion of its case-in-chief.  Vickery indicated that the State=s election satisfied him for purposes of resting and
then rested behind the State.








Because Vickery=s motion for an election proposed that the trial court
require the State to make its election at the close of the evidence and because
Vickery indicated after the State made its election that he was satisfied, for
the purposes of resting, Vickery=s
ability to complain of these decisions by the trial court is foreclosed.  See Prystash v. State, 3 S.W.3d 522,
531 (Tex. Crim. App. 1999) (discussing doctrine of invited error and stating, AIf a party affirmatively seeks action by the trial
court, that party cannot later contend that the action was error.@), cert. denied, 529 U.S. 1102 (2000); Benson
v. State, 496 S.W.2d 68, 70 (Tex. Crim. App. 1973 ) (AAppellant cannot now be heard to complain because the
court granted him what he asked for.@).  Alternatively, we hold that any error from
these rulings was harmless under either the constitutional or
non-constitutional harm analyses.  See
Tex. R. App. P. 44.2(a),
(b).  Here, the State made its election
at the conclusion of its case-in-chief, the trial court charged the jury
concerning the elected conduct, ensuring a unanimous verdict; and Vickery does
not claim that he was left in doubt as to which offense he was called upon to
defend in his case-in-chief.  We
overrule Vickery=s first point.

IV.  Outcry Testimony

In his second
point, Vickery argues that the trial court erred by admitting a portion of
McGinnis=s outcry testimony because it was not included in the AState=s Notice of
Intent to Use Outcry Statement.@  In each cause, the State provided written
notice of its intent to offer outcry testimony through McGinnis, the boys= mother.  The
notice summarizes the proposed statements as follows:

On or about November, 2002, [J.R.T.] and [J.D.T.]
stated that the Defendant would touch their penises while they were sitting in
his lap driving his black truck.  They
stated that the Defendant did this several times, but attempted to do it more
than he actually did. 

 








In a hearing outside the presence
of the jury, McGinnis testified that J.D.T. and J.R.T. told her that Vickery
touched them in their private area while riding in Vickery=s truck. 
McGinnis also testified, however, that J.D.T. told her Vickery had
touched his private area on one occasion while at his grandmother=s house in the front yard.  Defense counsel objected and argued that McGinnis should not be
permitted to testify about the boys=
statements concerning any touching that occurred outside of the truck because
such testimony would go beyond the scope of the notice.  The trial court overruled the objection and
allowed McGinnis to testify about J.D.T.=s
outcry concerning the incident at his grandmother=s house.

The State=s brief contains no analysis of this alleged trial
court error; after summarizing the facts, the State proceeds directly to a harm
analysis. Therefore, we presume the State concedes that the trial court abused
its discretion by admitting McGinnis=s
testimony that Vickery touched J.D.T. at his grandmother=s house. 
Accordingly, our task now is to determine whether the trial court=s error was harmful.

Error in the
admission of evidence is subject to a harm analysis under rule 44.2(b) of the
rules of appellate procedure.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Matz v.
State, 21 S.W.3d 911, 912 (Tex. App.CFort
Worth 2000, pet. ref=d).  Under rule
44.2(b), we are to disregard any error unless it affected appellant=s substantial rights.  Tex. R. App. P.
44.2(b).  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s verdict.  King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall
v. State, 961 S.W.2d 639, 643 (Tex. App.CFort
Worth 1998, pet. ref=d).








The improper
admission of evidence does not constitute reversible error if the same facts
are proved by other properly admitted evidence.  Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App.), cert.
denied, 528 U.S. 956 (1999); Matz, 21 S.W.3d at 912.  In the instant case, J.D.T. testified
without objection that Vickery touched him while he was playing outside of his
grandmother=s house. 
McGinnis=s testimony about the touching that occurred outside
of the grandmother=s house is cumulative of J.D.T.=s properly admitted testimony on the same issue.  We conclude that, in the context of the
entire case against Vickery, the trial court=s
error in admitting the testimony in question did not have a substantial or
injurious effect on the jury=s verdict and
did not affect Vickery=s substantial rights. 
See King, 953 S.W.2d at 271. 
Thus, we disregard the error, and we overrule Vickery=s second point. 
See Tex. R. App. P.
44.2(b); Poole v. State, 974 S.W.2d 892, 899 (Tex. App.CAustin 1998, pet. ref=d) (holding any error in admitting mother=s outcry testimony cured by admission of complainant=s testimony).

V.  Motion for Mistrial








In his third point,
Vickery argues that the trial court erred by denying his motion for mistrial
after a State=s witness testified about an extraneous offense in
violation of the trial court=s limine
order.  The State responds that the
trial court did not abuse its discretion by denying Vickery=s motion for mistrial.       Mistrials
are an extreme remedy for prejudicial events occurring during the trial
process.  Bauder v. State, 921
S.W.2d 696, 698 (Tex. Crim. App. 1996); Jackson v. State, 50 S.W.3d 579,
588 (Tex. App.CFort Worth 2001, pet. ref=d).  The
declaration of a mistrial ought to be an exceedingly uncommon remedy for
residual prejudice remaining after objections are sustained and curative
instructions are given.  Bauder, 921
S.W.2d at 698.  For this reason,
judicial admonishments to the jury are presumed effective.  Id.

When the trial
court sustains an objection and instructs the jury to disregard but denies a
defendant=s motion for mistrial, the issue is whether the trial
court abused its discretion by denying the mistrial.  Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App.
2004); Primes v. State, 154 S.W.3d 813, 814 (Tex. App.CFort Worth 2004, no pet.).  Its resolution depends on whether the trial court=s instruction to disregard cured any prejudicial
effect.  West v. State, 121
S.W.3d 95, 107 (Tex. App.CFort Worth 2003, pet. ref=d).  Generally,
an instruction to disregard impermissible argument cures any prejudicial effect.
Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 944 (2001).  Only
when it is apparent that an objectionable event at trial is so emotionally
inflammatory that curative instructions are not likely to prevent the jury from
being unfairly prejudiced against the defendant is a trial court required to
grant a mistrial.  Bauder, 921
S.W.2d at 698.








The trial court
determined the admissibility of McGinnis=s
outcry testimony outside the presence of the jury.  McGinnis testified that Vickery had asked J.R.T. to find out
whether he, Vickery, could touch J.R.T.=s
cousin.  The following exchange occurred
just before McGinnis testified:

The Court:  Okay. 
I=ll overrule the objections to the statements.  I=ll
allow both statements.  There was some
testimony about one of the kids telling her something about another child.  You=re
not going to put that on?

 

[Prosecutor]:  No, Your Honor.

The
Court:  Okay.

[Prosecutor]:  We have instructed all of our witnesses to
not go into any extraneous acts unless specifically directed to do so.

 

The
Court:  Okay.

Nonetheless, McGinnis testified,

[Prosecutor]:  Okay. 
Tell me first what [J.R.T.] told you happened.

 

[McGinnis]:  He told me that Bob had been touching him in
his private and that he asked to give a proposition to his cousin.

 

[Defense
Counsel]:  Objection, Your Honor, to
404(b) and the motion in limine that=s
in place as agreed to.

 

The
Court:  I=ll sustain the objection to that last answer.

[Defense
Counsel]:  Your Honor, I also object as
non responsive and ask that the jury be instructed to disregard it.

 

The Court:  I will instruct the jury to disregard that
last answer.

 








[Defense
Counsel]:  Your Honor, also, I would
move for a mistrial in light of the violation of the limine and also the 404(b)
motion that was granted, and I would move for a mistrial.

 

The Court:  I=ll
deny the motion for mistrial.  [Emphasis
added.]

 








Vickery argues that
the trial court erred by denying his motion for mistrial because the trial
court=s instruction to the jury to disregard McGinnis=s statement about Vickery asking J.R.T. to proposition
his cousin Awas not sufficient to cure the problem.@  We cannot
agree.  McGinnis testified that Vickery Aasked [J.R.T.] to give a proposition to his cousin,@ and defense counsel promptly objected before McGinnis
could testify any further.  This
isolated statement, unlike her testimony outside the presence of the jury, did
not include any particular details. 
Moreover, before McGinnis testified, the prosecutor stated that she had
instructed her witnesses that they were not to discuss any extraneous acts unless
specifically instructed to do so; thus, the statement was not the result of
prosecutorial misconduct.  We cannot
conclude that McGinnis=s statement was Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile.@  See
Hawkins, 135 S.W.3d at 77.  Under
these circumstances, we must presume that the instruction was effective.  See Bauder, 921 S.W.2d at 698.  Accordingly, we hold that the trial court
did not abuse its discretion by denying Vickery=s motion for mistrial.  Hawkins,
135 S.W.3d at 77.  We overrule Vickery=s third point.

VI.  Jury Charge

In his fourth
point, Vickery complains that the trial court erred by denying his request for
an instruction limiting the jury=s
consideration of extraneous offense evidence. 
Specifically, Vickery argues that the trial court should have instructed
the jury that prior bad acts and extraneous offenses could be considered only
for the purposes of showing the state of mind of Vickery and the child and
their previous and subsequent relationship.[3]









A party opposing
the admission of evidence has the burden of requesting a limiting instruction
at the introduction of the evidence.  Hammock
v. State, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001).  Once evidence is received without a limiting
instruction, it becomes part of the general evidence and may be used for all
purposes.  Id.  Allowing the jury to consider evidence for
all purposes and then telling them to consider that same evidence for a limited
purpose asks the jury to do the impossible. 
Id. at 894.  Thus, if a
limiting instruction is to be given, it must be given when the evidence is
admitted to be effective.  Id.

We have reviewed
the record, and Vickery did not request a limiting instruction for any evidence
admitted during trial that is presumably extraneous in nature.  Consequently, the evidence was admitted for
all purposes, and the trial court was not required to include a limiting
instruction in its charge to the jury.  See
id. at 895; King v. State, Nos. 14-02-00204-CR, 14-02-00205-CR, 2003
WL 1884295, at *5 (Tex. App.CHouston [14th
Dist.] April 17, 2003, pet. ref=d) (not
designated for publication).  We
overrule Vickery=s fourth point.

VII.  Comment on Weight of
Evidence

In his fifth point,
Vickery argues that he was deprived of a fair and impartial trial because the
trial court made an improper comment on the weight of the evidence in its
charge to the jury.  See Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon Supp. 2004-05).








The function of the
jury charge is to instruct the jury on the law applicable to the case.  Dinkins v. State, 894 S.W.2d 330, 339
(Tex. Crim. App. 1995), cert. denied. 516 U.S. 832 (1995).  A
charge that assumes the truth of a controverted issue is a comment on the
weight of the evidence and is erroneous. 
Whaley v. State, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986).  In examining alleged jury charge error, we
determine (1) whether error actually existed in the charge and (2) if an error
existed, whether sufficient harm resulted from the error to require reversal.  Mann v. State, 964 S.W.2d 639, 641
(Tex. Crim. App. 1998).[4]

The complained of
portion of the jury charge appears as follows:

The State has
elected to proceed on the conduct described by [J.D.T.] as the first time the
defendant is alleged to have touched the genitals of [J.D.T.] by grabbing them
with his hand occurring while [J.D.T.] resided at the residence on Jet Street
and was 8 or 9 years of age.[5]

 








Vickery argues that the charge
improperly comments on the weight of the evidence because it states that A>the conduct . . . occur[red]= instead of stating that >the conduct, if any, . . . which allegedly occurred.@  We
disagree.  A commonsense reading of the
sentence reveals that it can be broken down into two primary parts:  the first being, AThe State has elected to proceed on the conduct
described by [J.D.T.],@ and the second being, Aas the first time the defendant is alleged to have touched the genitals
of [J.D.T.] by grabbing them with his hand occurring while [J.D.T.] resided at
the residence on Jet Street and was 8 or 9 years of age.@  The first
part of the sentence indicates that the State has chosen a particular line of
conduct that it will rely upon for conviction. 
The second part of the sentence describes the conduct the State has
chosen to proceed upon.  The first part
inevitably leads one to conclude that J.D.T., during his testimony, described
some Aconduct@
that may or may not have occurred between Vickery and himself.  Whether the jury chose to believe J.D.T.=s testimony concerning this conduct does not negate
the fact that he did indeed testify about some conduct.  The second part of the sentence clearly uses
the word Aalleged@ as
a modifier of the entire descriptive phraseCthe
Aconduct@ to
which J.D.T. testified.  Accordingly, we
hold that this portion of the jury charge was not a comment on the weight of
the evidence.  See generally Hathorn
v. State, 848 S.W.2d 101, 114 (Tex. Crim. App. 1992) (reasoning trial court=s non-use of words Aalleged@ and Aif any@ not a comment on the weight of the evidence),
cert. denied, 509 U.S. 932 (1993). 
Consequently, we need not perform a harm analysis.  See Mann, 964 S.W.2d at 641.  We overrule Vickery=s fifth point.

VIII.  Witness Testimony Read
to Jury








In his sixth and final
point, Vickery argues that the trial court erred by including testimony
concerning an extraneous offense in testimony that was read to the jury during
deliberations.  He complains that part
of the testimony that was read Aincluded a
description of the incident which clearly was not the one elected by the State
and given in the jury charge as being relied upon for conviction.@ 

Article 36.28 of
the Texas Code of Criminal Procedure provides,

In the trial of a
criminal case in a court of record, if the jury disagree as to the statement of
any witness they may, upon applying to the court, have read to them from the
court reporter=s notes that part of such witness testimony or the
particular point in dispute, and no other . . . .

 

Tex. Code
Crim. Proc. Ann. art. 36.28 (Vernon
1981).  Thus, after the trial court
receives a proper inquiry from the jury, it must interpret the communication,
decide what sections of the testimony will best answer the inquiry, then limit
the rereading accordingly.  Brown v.
State, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994).  We review the trial court=s
determination of what testimony should be reread to the jury in response to an
inquiry during deliberations for an abuse of discretion.  Id.; Iness v. State, 606
S.W.2d 306, 314 (Tex. Crim. App. 1980).








The trial court
received a number of notes from the jury during its deliberations.  One note read, AWe disagree as to the detective=s statement about the position of the defendant=s hands on the steering wheel.@  Another note
read, AWe disagree as to the boys= testimony about how the genitalia was touched or
squeezed.  What was the phraseology used
by [J.R.T.] and [J.D.T.]?@  After defense
counsel asserted his objection to part of the proposed testimony to be read to
the jury, the court stated, AThe court
reporter has researched her notes, and she=s
going to read you what we think answers your question.@  A portion of
the testimony reread to the jury included J.D.T.=s testimony describing Vickery touching him outside of his grandmother=s house. 
Vickery objected that the inclusion of the testimony describing the Aporch incident@ at
J.D.T.=s grandmother=s
house would cause the jury to misuse this extraneous offense information and Acreate[] the risk that the decision of the jury would
not be unanimous as to the offense the State had chosen to rely upon.@ 








The record
demonstrates that the trial court selected testimony that it considered would
best resolve the disagreement between the jury members. Indeed, the testimony
read to the jury includes excerpts from J.D.T.=s and J.R.T.=s testimony wherein they describe when Vickery touched
their genitalia.  The testimony appears
to address the jury=s specific inquiry while not delving into extraneous
matters.  Moreover, the jury charge
specifically instructed the jury as to what conduct the State had elected to
rely upon for conviction.  We cannot
agree with Vickery that simply reading testimony that included conduct not
relied upon by the State for the conviction caused the jury to convict him for
an offense not elected by the State.  We
must presume that the jury abided by the trial court=s instructions, and there is no evidence to show
otherwise.  Hutch v. State, 922
S.W.2d 166, 170 (Tex. Crim. App. 1996) (A[A]bsent
evidence to the contrary, we presume the jury followed the law provided by the
charge.@).  We hold
that the trial court did not abuse its discretion by including testimony that
Vickery touched J.D.T.=s genitalia outside of his grandmother=s house in a portion of the testimony read to the jury
during deliberations.  See Brown,
870 S.W.2d at 55.  Accordingly, we
overrule Vickery=s sixth point.

IX.  Conclusion

Having overruled
all six of Vickery=s points, we affirm the trial court=s judgment.       


PER CURIAM

 

PANEL F:    WALKER,
HOLMAN, and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: September 15, 2005











[1]See Tex. R. App. P. 47.4.





[2]After the trial court indicated that it would require
the State to make an election at the close of all of the evidence, Vickery lodged
the following objection:

 

[Defense Counsel]: . . . .  But
I do just note for the record by exception that I object that the State will
not be required to make their election when they rest their case-in-chief.





[3]The only extraneous offense evidence pointed to by
Vickery as potentially subject to this instruction is evidence of Aimproper touches@
between himself and J.R.T. and J.D.T. 





[4]Vickery did not object at trial that this portion of
the jury charge constituted a comment on the weight of the evidence. 





[5]Except for the name and age of the child, cause number
0890810D included an identical paragraph.