

### NUMBER 13-06-319-CR

### COURT OF APPEALS

### THIRTEENTH DISTRICT OF TEXAS

### CORPUS CHRISTI - EDINBURG

**FRANCISCO AGUILAR,**                                                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                       **Appellee.**

### On appeal from the 331st District Court
### of Travis County, Texas

### MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Vela**
**Memorandum Opinion by Justice Rodriguez**

Appellant, Francisco Aguilar, was charged by indictment with aggravated assault with a deadly weapon on a public servant. *See* TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (Vernon Supp 2007). The jury found appellant guilty and sentenced him to twelve years' confinement in the Texas Department of Criminal Justice–Institutional Division. By two

points of error, Aguilar contends that the trial court's charge violated his right to due process under the Fourteenth Amendment and sections 38.04 and 38.05 of the Texas Code of Criminal Procedure. *See* U.S. CONST. amend XIV, § 1; TEX CODE CRIM. PROC. ANN. arts. 38.04, 38.05 (Vernon 1979). We affirm.

## I. Background

During Aguilar's trial, Michael McGough testified that Aguilar harassed him and a group of colleagues. After McGough told Officers Carlos Saldivar and Steve Boline about the incident, Officer Saldivar approached Aguilar to question him. According to McGough, the officers were wearing their uniforms and badges. Officer Saldivar testified that Aguilar smelled of alcohol and abruptly "took a swing" at him. A struggle ensued. Officer Saldivar further testified that Aguilar struck him repeatedly and cut him with a knife that Aguilar had been holding under his sleeve. Aguilar testified that he had taken the knife out to peel an orange and that "when I saw the uniform of the police I thought he was going to ask me something," but instead, Officer Saldivar "came at [him]," "swung," and hit him in the eye area without asking any questions. Aguilar claimed that the officers beat him even though he did not resist arrest.

## II. Standard of Review

An appellate court's "first duty" in analyzing a jury charge issue is "to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Although a harmless-error analysis applies "to a wide range of errors" and "most constitutional errors can be harmless," the Supreme Court has found that a few certain errors "defy analysis by 'harmless-error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991); *see United States v. Gonzalez-Lopez*, 548 U.S. 140 , __, 126 S.Ct. 2557, 2564 (2006) (listing

2

errors the Supreme Court has determined to be structural and not subject to harmless-error review); *see also Johnson v. United States*, 520 U.S. 461, 468-69 (1997) (opining that structural error has been found "only in a very limited class of cases").

If error requiring harmless-error analysis is found, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006); *see Almanza v. State*, 686 S.W.2d 157,171 (Tex. Crim. App. 1985) (op. on reh'g). If the defendant properly objected to the erroneous jury charge, reversal is required if we find "some harm" to the defendant's rights. *Olivas*, 202 S.W.3d at 144; *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171. However, if the defendant did not object or stated that he has no objection to the jury charge, we may only reverse if the record shows egregious harm to the defendant. *Olivas*, 202 S.W.3d at 144; *Ngo*, 175 S.W.3d at 743-44; *Almanza*, 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Garrett v. State*, 159 S.W.3d 717, 719-21 (Tex. App.–Fort Worth 2005), *aff'd*, 220 S.W.3d 926 (Tex. Crim. App. 2007) (finding no egregious harm in jury charge because "the record and statements of counsel [did] not indicate that [defendant's] awareness that Complainant was a firefighter was a contested issue"). Jury charge error causes egregious harm to the defendant if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (plurality opinion).

### III. Applicable Law

A person commits an aggravated assault of a public servant if the person commits an assault as defined in section 22.01[1] and the offense is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty as a public servant." TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (Vernon Supp. 2007). Aggravated assault is a second-degree felony, unless it is committed against an individual the actor knows is a public servant who is lawfully discharging his duties, in which case it is a first-degree felony. *Id.* A public servant is defined as "a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties: (A) an officer, employee, or agent of government." *Id.* § 1.07(a)(41) (Vernon Supp. 2007).

### IV. Discussion

### A. Due Process

By his first issue, Aguilar argues that the trial court violated article 38.05 of the Texas Code of Criminal Procedure by impermissibly instructing the jury on an ultimate fact in dispute—that Officer Saldivar was a public servant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979). Article 38.05 provides that "[i]n ruling upon the admissibility of evidence, the judge shall not discuss or comment on the weight of the same or its bearing in the case. . . ." *Id.* The jury charge included the following: "You are instructed that

---

[1] A person commits an assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another, . . . intentionally or knowingly threatens another with imminent bodily injury, . . . or intentionally or knowingly causes the physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01 (Vernon 1979).

4

Carlos Saldivar is a public servant."  Aguilar complains that this language violated his due process rights because it was a comment on the weight of the evidence prior to the verdict.

"A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous."  *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986).  At trial, however, Aguilar never disputed that Officer Saldivar was a police officer.  Moreover, under section 1.02(41)(A) of the Texas Penal Code, a police officer is defined as a "public servant."  TEX. PENAL CODE ANN. § 1.07 (Vernon Supp. 2007).  Therefore, because the jury charge did not comment on a controverted issue, it was not error for the trial court to include the instruction in the jury charge.  *See Whaley*, 717 S.W.2d at 32.

Relying on *In re Winship*, 397 U.S. 358 (1970), Aguilar also contends in his first issue that the complained-of jury instruction relieved the State of proving an element of the offense beyond a reasonable doubt, thus violating his due process rights, and therefore the case should be reversed and remanded without a harm analysis.  However, even assuming error, we disagree and conclude that a harmless error analysis is appropriate.

In *Johnson v. United States*, the United States Supreme Court explained that improperly instructing the jury on an element of the offense is subject to a harmless-error analysis.  520 U.S. at 468; *see Neder v. United States*, 527 U.S. 1, 8 (1999) ("We have often applied harmless-error analysis to cases involving improper instructions on a single element of the offense.").  The Texas Court of Criminal Appeals has also decried a trend "'to label certain errors 'fundamental' then automatically reverse convictions without regard to the nature and harm of the error in the case.'"  *Hawkins v. State*, 135 S.W.3d 72, 82 (Tex. Crim. App. 2004) (quoting *Almanza*, 686 S.W.2d at 172-73).  Also, "aside from

5

federal constitutional errors labeled by the Supreme Court as structural, no error is immune from a harm analysis." *Id.* The Supreme Court has identified the following as structural errors: complete denial of counsel; biased trial judge; racial discrimination in selection of grand jury; denial of self-representation at trial; denial of public trial; and defective reasonable-doubt instruction. *Gonzalez-Lopez*, 548 U.S. 140, __, 126 S.Ct. at 2564 ; *Neder*, 527 U.S. at 8; *Johnson*, 520 U.S. at 468 (stating that improperly instructing the jury on an element of the offense is subject to harmless-error analysis); *see Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.–Dallas 1994, no pet.) (applying harmless error analysis to error under article 38.05); *Tennison v. State*, 814 S.W.2d 484, 486 (Tex. App.–Waco 1991, no pet.) (same). Aguilar's complaints are not among the structural errors listed. Therefore, we apply the *Almanza* harm analysis. *See* 686 S.W.2d at 171. Because Aguilar did not object to the jury charge, we must determine whether the error, if any, caused him egregious harm. *See Olivas*, 202 S.W.3d at 144; *Ngo*, 175 S.W.3d at 743-44; *Almanza*, 686 S.W.2d at 171.

Because we have determined that the jury was not impermissibly instructed on an ultimate fact in dispute under 38.05 and that we must apply *Almanza's* harm analysis even if the complained-of instruction was error, we overrule Aguilar's first issue.

### B. Egregious Harm

In his second issue, Aguilar argues that the trial court's charge error resulted in egregious harm under *Almanza*. *See Almanza*, 686 S.W.2d at 171. Assuming without deciding there was jury charge error, we determine egregious harm by first considering the alleged error in light of the totality of the charge. *See Almanza*, 686 S.W.2d at 171. The jury charge accurately described the relevant law and the elements of first degree

6

aggravated assault of a public servant, including the mens rea component: that the appellant knew that Officer Saldivar was a public servant.[2] The application paragraph of the jury charge instructed the jury that it had to find the elements of the offense beyond a reasonable doubt.[3] The charge further instructed the jury that it could presume that Aguilar knew Officer Saldivar was a public servant if the "public servant was wearing a distinctive uniform or badge indicating his employment as a public servant." However, it also instructed the jury "that facts giving rise to the presumption must be proven beyond a reasonable doubt," and "even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged." Therefore, the jury could have determined that Officer Saldivar was a public servant, but that Aguilar was not aware of it.

Next, we must consider the state of the evidence and determine whether the alleged jury charge error related to a contested issue. *See Hutch*, 922 S.W.2d at 173; *Almanza*, 686 S.W.2d at 171. After reviewing the record, we conclude that Officer Saldivar's status

---

[2] The charge instructed the jury that

[a] person commits the offense of aggravated assault on a public servant with a deadly weapon, if he commits the offense of assault, as herein defined, and he uses or exhibits a deadly weapon during the commission of the offense when he knows that the person assaulted is a public servant while the public servant is lawfully discharging an official duty.

[3] The charge instructed the jury as follows:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Francisco Aguilar. . . did then and there intentionally and knowingly threaten Carlos Saldivar with imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said assault, and the said Francisco Aguilar did then and there know that said Carlos Saldivar was a public servant, to-wit: a Peace Officer, and that the said Carlos Saldivar was then and there lawfully discharging an official duty to-wit: attempting to detain or arrest the defendant, you will find the defendant guilty of the offense of aggravated assault of a peace officer and so say by your verdict, but if you do not so believe, or if you have reasonable doubt thereof, you will acquit the defendant of the offense of aggravated assault of a peace officer and proceed to consider whether the defendant is guilty of the lesser included offense of resisting arrest.

7

as a police officer was not in dispute. Aguilar's theory of defense was that the officers, including Officer Saldivar, overreacted and created the story about him in order "to cover themselves." Aguilar's counsel referred to Officer Saldivar as "Officer" while cross-examining Officer Saldivar and when questioning other witnesses. During direct examination, Aguilar testified that he saw Officer Saldivar's uniform. He referred to Officer Saldivar as "the police" and "an officer." Throughout closing argument, Aguilar's counsel referred to Officer Saldivar as an "officer."

The State also presented probative evidence, the sufficiency of which is not contested on appeal, to the jury that Officer Saldivar was a police officer. Officer Saldivar testified that he was on duty when he encountered Aguilar. Two of the State's witnesses and Aguilar testified that Officer Saldivar was wearing his police uniform and a badge. Officer Saldivar wore his uniform and his badge when he testified at Aguilar's trial. Moreover, section 1.07(41)(A) defines a police officer as a "public servant." TEX. PENAL CODE ANN. § 1.07(a)(41) (Vernon Supp. 2007). Therefore, the jury could have affirmatively found that Officer Saldivar was a public servant without the trial court's instruction because the fact was uncontested and the evidence supported that finding.

Finally, we review counsel's closing arguments. *See Almanza*, 686 S.W.2d at 171. Defense counsel referred to Officer Saldivar as "officer" and "Officer Saldivar" during closing argument. He asked the jury, "So it is not a matter of do you believe [Aguilar] or do you believe the officers. . . . The State is here and required to prove that he's guilty beyond a reasonable doubt. . ." Aguilar's counsel argued that the State had to prove that Aguilar "intentionally and knowingly threaten[ed] the officer. . . . Was the officer lawfully

discharging an official duty?" He then asked the jury, "Can a police officer provoke a situation and then hide behind his badge and make the one he provoked a felon?"

Although the trial court's charge included the complained-of instruction, it was otherwise correct and properly instructed that the State had the burden of proving beyond a reasonable doubt all of the elements of the offense. The evidence indisputably showed that Officer Saldivar was a police officer. *See Garrett*, 159 S.W.3d at 719-21. A police officer is included in the penal code's definition of a public servant. *See* TEX. PENAL CODE ANN. § 1.07. Aguilar's testimony and arguments presented the position that Officer Saldivar was a police officer who acted inappropriately. Therefore, based on the jury charge as a whole and the entire record in this case, we conclude the record does not show egregious harm. *See Olivas*, 202 S.W.3d at 144. Aguilar was not denied a fair and impartial trial. The charge error, if any, did not affect the very foundation or basis of his case, deprive him a valuable right, or significantly affect his defensive theory that Officer Saldivar attacked him. *See Hutch*, 922 S.W.2d at 171. We overrule Aguilar's second issue.

## V. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 17th day of April, 2008.