

# IN THE
# TENTH COURT OF APPEALS

## No. 10-10-00367-CR
## No. 10-10-00371-CR

**KENNETH RAY MORGAN,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court Nos. 2010-611-C2 and 2010-610-C2

## MEMORANDUM  OPINION

Kenneth Ray Morgan appeals from convictions for the offenses of Violation of Protective Order and Assault by Occlusion.[1]  TEX. PEN. CODE ANN. §§ 25.07; 22.01(b)(2)(B) (West 2011).  After pleading true to an enhancement paragraph on each charge, Morgan was sentenced to fifteen years in prison and a $5,000 fine on each charge.

The offenses occurred at the same time, were tried together, and one jury deliberated on both offenses simultaneously.  The result was a conviction for each of the

---

[1] Morgan was tried jointly for these offenses; however, two separate charges were submitted to the jury.

offenses. Due in large part to the complexity of trying, and thus submitting separate jury charges for each offense, the charges submitted contained a number of problems including multiple improper citations to statutes, omitted definitions, definitions and instructions included in one charge that were needed in the other charge or were unnecessary to the charge in which they were included, references to issues that had been dropped from the indictment, omitted elements of the offense, assumed the existence of an element of the offense, and expanded the culpable mental state, also known as *mens rea*, beyond the indictment thus allowing a finding of guilt on an offense other than as included or alleged in the indictment. While the verdict of the jury may be the proper one because the evidence of guilt was very strong, upon the jury charges as submitted we cannot say that the numerous errors did not cause Morgan egregious harm. It seems somewhat comparable to a calculus student that may have ultimately arrived at the correct answer but due to multiple errors in working through the problems as shown by his work, it was not an answer for which the instructor can give any credit.

Specifically, Morgan complains that the respective guilt-innocence jury charge in the guilt-innocence phase was defective because essential elements were omitted from the application paragraph in the protective order charge, statutory definitions were omitted in both jury charges, improper *mens rea* instructions were included in both jury charges, the indictment was impermissibly broadened in the assault jury charge, and the assault jury charge contained a comment on the weight of the evidence.

Because we find that the charges were erroneous and that Morgan was

egregiously harmed, we reverse the judgments of the trial court and remand for new trials.

*Standard of Review for Charge Error*

We must first determine whether the charges as submitted to the jury were erroneous and if so, we must then analyze these complaints utilizing the standards set forth in *Almanza v. State*. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (*citing Olivas v. State*, 202 S.W.3d 137, 143-44 (Tex. Crim. App. 2006), *citing Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)). Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza,* 686 S.W.2d at 171. It is undisputed that Morgan did not object to either of the jury charges.

In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d at 144. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

Because these causes were tried together, we are addressing the issues in one opinion, as it is necessary to consider the entire record when determining harm from error in the jury charge, and we are of the opinion that the effect of the two erroneous charges submitted to the same jury increased the harm. We will address each issue

separately as briefed by the parties; however, we will only perform one harm analysis for each offense.

## *VIOLATION OF PROTECTIVE ORDER*

In the appeal of the violation of a protective order conviction, Morgan first complains that the trial court erred by failing to include three elements of the offense of violation of a protective order in the jury charge. The application paragraph of the charge as submitted to the jury stated:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of September, 2009, in McLennan County, Texas, the defendant, Kenneth Ray Morgan, did then and there intentionally or knowingly violate the terms of an order issued by Billy Martin of the Justice of the Peace Court Precinct 1, Place 2 of McLennan County, Texas, on the 26th day of July, 2009, under authority of Article 17.292, Code of Criminal Procedure, by intentionally or knowingly committing family violence against Melissa Eversole, to wit: hitting or striking or grabbing or choking or suffocating the said Melissa Eversole, then you will find the Defendant guilty of the offense of Violation of a Protective Order, as charged in the indictment.

### *Relevant Statutes—Violation of Protective Order*

Section 25.07 of the Penal Code establishes the offense of violation of protective order in relevant part as follows:

> (a) A person commits an offense if, in violation of … an order issued under Article 17.292, Code of Criminal Procedure, … the person knowingly or intentionally:
>
> (1) commits family violence….

TEX. PEN. CODE ANN. § 25.07(a) (West 2011).

Family violence is defined in section 71.004 of the Texas Family Code in relevant part as:

an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but not does include defensive measures to protect oneself.

TEX. FAM. CODE ANN. § 71.004(a) (West 2008).

*Omitted Elements*

Morgan complains that the application paragraph was required to include the phrase "at a proceeding that the Defendant attended" after the description of the protective order. Further, he complains that the phrase "a member of the Defendant's family or household" was required to be included to describe Melissa Eversole.[2] Lastly, he complains that the phrase "and said act was intended to result in physical harm, bodily injury, or assault" should have been placed after the manners and means of the assault. We must determine if the elements complained of by Morgan were elements that were required to be included in the application paragraph of the jury charge.

The Court of Criminal Appeals has stated that the hypothetically correct jury charge for a violation of a protective order offense would state the elements of the charged offense as follows: (1) Morgan, (2) in violation of an order issued on the 26th day of July, 2009, by the Precinct 1, Place 2 Justice of the Peace Court of McLennan County, Texas under Article 17.292, Code of Criminal Procedure, (3) at a proceeding that Morgan attended, (4) knowingly or intentionally, (5) caused bodily injury to Melissa Eversole by hitting or striking or grabbing or choking or suffocating her, and (6) said act was intended to result in physical harm, bodily injury, or assault. *See Villarreal*

---

[2] In his second issue, Morgan further complains that the abstract portion of the charge was also erroneous by not including the definition of these omitted terms. This complaint will be addressed below.

*v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

*"At a Proceeding the Defendant Attended"*

While the specific language of section 25.07 does not require a finding that the defendant attended the hearing on the protective order, this element in some form is required to be included in the application paragraph of the jury charge. *See Harvey v. State*, 78 S.W.3d 368, 372-73 (Tex. Crim. App. 2002). The State contends that the inclusion of "intentionally or knowingly" immediately prior to "violate the terms of an order … under authority of Article 17.292, Code of Criminal Procedure" satisfies this requirement because, although there is no requirement of intent required for the violation of the order, in order for the jury to determine that there was an intentional or knowing violation of that order, knowledge of the protective order's existence would be required. *See Id.* The language as set forth in the jury charge was erroneous as it placed an improper requirement of intent on Morgan and did not require a finding that Morgan attended the hearing or otherwise had specific knowledge of the existence of the protective order.

*"A Member of the Defendant's Family or Household" and "Said Act was Intended to Result in Physical Harm, Bodily Injury, or Assault"*

Morgan next complains that the violation of protective order charge did not require findings that Melissa Eversole, the victim, was a member of his family or household. Morgan further complains that the charge did not require a jury finding that the assault "was intended to result in physical harm, bodily injury, or assault." The application paragraph of the jury charge included a requirement that the jury find that Morgan "intentionally or knowingly committ[ed] family violence against Melissa

Eversole." "Family violence" was properly defined in the abstract portion of the charge as "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but not does include defensive measures to protect oneself." However, the application paragraph did not make it clear that the jury was required to make these findings that were not but should have been included within the application paragraph. The charge to the jury was erroneous for failing to include these elements in the application paragraph of the jury charge.

*Omitted Definitions*

Morgan complains in his second issue that the trial court's jury charge was erroneous because it did not include definitions of "family" and "household" in the abstract portion of the charge as those terms have been statutorily defined and therefore, were required to be included in the jury charge.[3]

These terms have been statutorily defined in the Family Code and extended to the Penal Code in the Violation of Protective Order offense. *See* TEX. FAM. CODE ANN. §§ 71.003 (definition of "family"), 71.005 (definition of "household") (West 2008). "A trial court is statutorily obligated to instruct the jury on the law applicable to the case." *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). That statutory obligation requires that each statutory definition that affects the meaning of an element of the offense be communicated to the

---

[3] While "dating violence" has been included in the definition of "family violence," there was no allegation in the indictment or trial that the State was seeking conviction of the violation of the protective order based on dating violence.

jury. *Id.* The trial court's failure to include the definitions was erroneous.

*Erroneous Instructions*

Morgan complains in his third issue that the jury charge's instructions defining "intentionally" and "knowingly" were erroneous because they included the definition of the result of his conduct and the nature of his conduct. The jury charge on the violation of protective order charge included definitions of both "result-of-conduct" and "nature-of-conduct" related to the definitions of both "intentionally" and "knowingly." Assault with bodily injury is a "result-of-conduct" offense, and the State does not contend that the offense of violation of a protective order is any different. *See Landrian v. State,* 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). The inclusion of the instructions relating to the nature of Morgan's conduct in the abstract portion of the charge was erroneous.

## ASSAULT BY OCCLUSION

A separate jury charge was submitted to the jury for the assault by occlusion offense. Morgan complains in his brief to this Court that the jury charge was erroneous for reasons separate from the jury charge on the violation of protective order offense.

*Erroneous Instructions*

Morgan's first two issues complain that the trial court erred by including the definitions of "dating relationship" and "family violence" in the abstract portion of the jury charge on guilt-innocence for the assault by occlusion offense which he contends impermissibly broadened the indictment by allowing him to be convicted of an offense that was in part never presented to the grand jury.

*Relevant Statutes*

Assault by Occlusion as used in this case is defined in the Penal Code as a person who "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse," which offense becomes a third-degree felony "(b) … if the offense is committed against … (2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if: … (B) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person or by applying pressure to the person's throat or neck or by blocking the person's nose or mouth; …."  TEX. PEN. CODE ANN. § 22.01(a)(1) & (b)(2)(B) (West 2011).

The relevant sections of the Family Code are as follows:

§ 71.003:

"Family" includes individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code, individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together.

§ 71.004:

"Family violence" means:

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;

(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or household toward a child of the family or

household; or

(3) dating violence, as that term is defined by Section 71.0021.

§ 71.005:

"Household" means a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other.

§ 71.0021:

(a) "Dating violence" means an act by an individual that is against another individual with whom that person has or has had a dating relationship and that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

(b) For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:

   (1) the length of the relationship;

   (2) the nature of the relationship; and

   (3) the frequency and type of interaction between the persons involved in the relationship. . . .

TEX. FAM. CODE ANN. §§ 71.003, 71.004, 71.005, & 71.0021 (West 2008).

*Application Paragraph*

The application paragraph contained in the jury charge on the assault by occlusion offense stated:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of September, 2009, in McLennan County, Texas, the defendant, Kenneth Ray Morgan, did then and there intentionally, knowingly, or recklessly cause bodily injury to Melissa Eversole, a member of the Defendant's family or household, as described by 71.005 or 71.0021(b), Family Code, by intentionally, knowingly, or recklessly

impeding the normal breathing or circulation of the blood of the said Melissa Eversole, by applying pressure to the throat or neck and/or blocking the nose or mouth, of the said Melissa Eversole, then you will find the Defendant guilty of the offense of Assault Family Violence by Occlusion, as charged in this indictment.

*Dating Relationship*

Morgan complains in his first issue that the jury charge erroneously broadened the charged offense set forth in the indictment because it allowed a conviction based on a dating relationship, which was set forth in the indictment solely by an erroneous attempt to reference the section in the Family Code that defines "dating relationship." The original indictment from the grand jury alleged in relevant part that "KENNETH RAY MORGAN … did then and there intentionally, knowingly, or recklessly cause bodily injury to MELISSA EVERSOLE, a member of the Defendant's family or household, as described by Section 71.033 or 71.005 or 71.00021(b), Family Code …." The indictment was amended without objection by the defense prior to trial and abandoned the reference to Section 71.033, a section that does not exist in the Family Code, and changed Section 71.00021(b) to 71.0021(b). Section 71.005 contains the statutory definition of "household" and section 71.0021(b) contains the statutory definition of "dating relationship." Presumably the State intended the reference to section 71.033 which was abandoned to actually refer to section 71.003, which contains the statutory definition of "family."

Morgan contends that the reference to section 71.0021(b) was insufficient to allow the inclusion of "dating relationship" in the definition of "family or household." We disagree in part with that complaint. We note that "dating relationship" is a separate

definition from the definitions of either "family" or "household" in the Family Code.

The purpose of an indictment is to give a defendant notice of the substance of the charges against him or her. As such, although it certainly could have been worded more clearly and should have set forth the correct section numbers, Morgan was given notice at trial that the State intended to rely on the definitions set forth in the family code of "household" and "dating relationship" in the indictment. Section 22.01(b)(2)(B) refers specifically to those sections of the Family Code by number when defining which persons would qualify as victims for this offense. Morgan does not contend that he did not have notice of the intent of the State to rely on a dating relationship between Eversole and himself.

Morgan did not file a motion to quash the indictment, but now raises this deficiency by claiming that it adds an uncharged manner and means of the offense in the jury charge. To the degree that Morgan is complaining about a defect in the substance or form of the indictment, this objection has been waived by the failure to raise it in the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14; *see also Smith v. State*, 309 S.W.3d 10, 18 (Tex. Crim. App. 2010). To the extent that Morgan is complaining that the instruction regarding "dating relationship" was erroneously included in the jury charge because it broadened the indictment, we also find that this was not erroneous based on the language of the indictment. We overrule issue one.

*Family Violence*

Morgan complains that the trial court erred by including the definition of "family violence" as set forth in Family Code section 71.004 in the jury charge because it is not a

required definition for the charged offense. Morgan contends that the inclusion of the definition impermissibly broadened the indictment. The State contends that the instruction was necessary because the definition of "family violence" includes "dating violence" and that those terms are synonymous. "Dating violence" is defined in section 71.0021(a) of the Family Code but the term "dating violence" was not included in the definition of "family violence" provided in either charge to the jury. Further, while "dating violence" is one type of "family violence," the terms are not entirely synonymous because "family violence" has a broader meaning than "dating violence." However, even if this assertion were correct, the language of this charge would give no indication that "dating violence" was included in the definition of "family violence" or how it was connected to the application paragraph of the assault offense. Ultimately, however, the definition of "dating violence" is not an element of the offense of assault by occlusion either and was not relevant to this offense.

We agree that the definition of "family violence" should not have been included in the jury charge for the assault by occlusion offense because neither the term "family violence" or the term "dating violence" is an element or other necessary part of the offense of assault by occlusion. However, we do not find that the indictment was erroneously broadened by the inclusion of this instruction because in the charge before the jury it had no connection to or was ever tied to the application paragraph.

*Erroneous Instructions*

Morgan complains that the trial court erred in its definitions in the abstract portion of the jury charge regarding *mens rea* because the definitions given included an

instruction on "nature-of-conduct" in addition to "result-of-conduct." Assault by occlusion is a "result-of-conduct" offense. *See Landrian v. State,* 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). The jury charge included the definition of "result-of-conduct" with the definitions of "intentionally," "knowingly," and "recklessly" but also included the definition of "nature-of-conduct" with the definition of "knowingly" only. The State concedes that this inclusion was erroneous and we agree.

### *Comment on the Weight of the Evidence*

Morgan complains in his fourth issue that the language of the application paragraph "a member of the Defendant's family or household" as it was worded removed the requirement that the jury determine that issue and in effect, was a directed verdict by the trial court on that issue.

Article 36.14 of the Code of Criminal Procedure requires that the trial court deliver to the jury a "written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous." *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986); *see also Grady v. State*, 634 S.W.2d 316, 317 (Tex. Crim. App. 1982) (observing that "trial court in its charge to a jury should never give the jury an instruction which constitutes a comment by the court on the elements of the alleged offense, or assumes a disputed fact").

Morgan's defense was based on alibi and identity; that being that he was in another city on the date of the offense and therefore, the offense must have been committed by another person who was identified as being present at the scene of the offense around the time of the assault. Our review of the record shows that the issue of whether or not Morgan and Eversole were residing together was not controverted. Because of this, we are not persuaded that the charge as written "assume[d] the truth of a controverted issue." *See Casey v. State*, 215 S.W.3d 870, 877 (Tex. Crim. App. 2008) (*citing Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986). *See also Munson v. State*, No. 10-09-00319-CR, 2011 Tex. App. LEXIS 6806 at *4 (Tex. App.—Waco August 24, 2011, no pet. h.). We overrule issue four of the assault by occlusion offense.[4]

*Omitted Definitions*

Morgan complains in his fifth issue that the trial court erroneously omitted a definition of "family" in the jury charge on the assault by occlusion offense. The State contends that the trial court was not required to include the definition of "family" because it had abandoned the statutory reference to "family" by deleting "71.033" from the indictment. While we can assume that the State was referring to the definition of "family" as set forth in section 71.003 of the Family Code, and that section was indeed marked out on the indictment, the term "a member of Defendant's family or household" immediately preceding the statutory references was not deleted and was submitted to the jury in the charge.

"A trial court is statutorily obligated to instruct the jury on the law applicable to

---

[4] This is not to say that the application paragraph should have been phrased as it was. It is preferable for the jury to be charged in such a way that they must find each element necessary for guilt and thus avoid an argument on appeal.

the case." *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). That statutory obligation requires that each statutory definition that affects the meaning of an element of the offense be communicated to the jury. *Id*. Because there was a reference to Eversole being a member of Morgan's "family" in the application paragraph of the assault by occlusion offense, the trial court erred by failing to include the statutory definition of "family" in the jury charge.

*HARM ANALYSIS*

Having found multiple errors in each of the jury charges, we must next determine whether these errors constituted egregious harm. The actual degree of harm of these errors must be evaluated in light of: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the final arguments of the parties; and (4) any other relevant information revealed by the trial record as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In regard to the fourth factor, we must consider, on this record, the submission of the two separate jury charges each with various errors contained therein.

### *Violation of Protective Order*

Having found errors in the charge relating to the violation of the protective order as discussed above, we must determine if Morgan was egregiously harmed by those errors.

#### *The Entire Jury Charge*

As discussed in detail above, the jury charge as submitted on the violation of

protective order offense was flawed in multiple respects. Three elements of the offense were not included in the application paragraph. Statutorily defined terms of "household" and "family" were not included. The inapplicable *mens rea* relating to "nature-of-conduct" was included.

*Missing Elements*

Relating to the element of Morgan's presence at the hearing on the violation of the protective order, the State's burden to establish that Morgan had some knowledge of the order was, if anything, increased by the requirement that the violation of the protective order itself was intentional or knowing.

Relating to the element of Eversole being "a member of the Defendant's family or household," the definition of "family violence" set forth in the abstract portion of the charge included those terms, although their statutory definitions were also improperly omitted.

Relating to the element of whether the assault was "*intended to result* in physical harm, bodily injury, assault, or sexual assault" being omitted from the application paragraph, we find that although there was a definition of "family violence" included in the charge, it did not require a finding solely that the assault was "intended to result in physical harm, bodily injury, assault, or sexual assault" but also added "or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but not does include defensive measures to protect oneself," which would potentially allow the jury to consider an additional definition that was not relevant to the offense as alleged in the indictment and could result in a

conviction without the requisite intent.

*Omitted Definitions*

The definitions of "family" and "household" were not included in the abstract portion of the charge. However, the omission of the definition of "family" was not particularly harmful as there was no evidence of a familial relationship. The Family Code's definition of "household" is not significantly different from its commonly known definition. When a statutory term is not defined in the jury charge, we are to assume that the jury considered the commonly understood meaning of the term in its deliberations. *See Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983). In *Merriam-Webster's Collegiate Dictionary*, "household" is defined as (1) those who dwell under the same roof and compose a family; also (2) a social unit composed of those living together in the same dwelling. *Merriam-Webster's Collegiate Dictionary* 561 (10th ed. 2000). We see no meaningful distinction between the two definitions. Additionally, the Family Code's definition of "household" was included in the assault by occlusion jury charge.

However, we note that "dating violence," which was an allegation included in the assault by occlusion offense, was not part of the indictment in the violation of protective order offense. When reviewing the two charges submitted jointly to the jury, the distinct allegations allowed in the definition of "family violence" which was presented in both jury charges also enhances the confusing language of the charges.

*Erroneous Instructions*

The *mens rea* instruction in the jury charge improperly included the definitions of

"nature-of-conduct" which could have been largely minimized had the charge properly included the element of "intended to result in physical harm, bodily injury, assault, or sexual assault" in the application paragraph because then a finding would have been required relating to the result of Morgan's conduct. This failure enhances the error of including the surplus definition.

*Conclusion on Review of Charge Factors*

The multiple errors in the charge, especially the omitted elements, significantly increased the harm to Morgan.

*The State of the Evidence*

The state of the evidence, including the contested issues and the weight of the probative evidence, demonstrates that the protective order was issued by authority of the Code of Criminal Procedure, which requires the presence of the defendant, and the order indicates that Morgan was present. *See* TEX. CODE CRIM. PROC. ANN. art. 17.292(j) (West Supp. 2010). Further, there is an acknowledgement of receipt of the order signed by Morgan and witnessed by a deputy. There was no evidence presented that Morgan was unaware of the existence of the protective order.

The evidence was uncontroverted that Eversole was assaulted and suffered bodily injury as a result. Morgan's defense was that he was working out of town on the day of the offense. Eversole and a neighbor who lived two houses down from Eversole and Morgan but was at her mother-in-law's house next door to Eversole and Morgan's house each testified that Morgan was residing with Eversole at the time of the offense and had been for a period of approximately six to eight weeks. Eversole identified

Morgan as the person who had assaulted her and the neighbor observed Morgan outside of the residence of Eversole and Morgan shortly after Eversole had come next door to the mother-in-law's home for help after the assault. The neighbor's husband had been a friend of Morgan since high school and the neighbor had known him since she was seventeen. The neighbor testified that she saw Morgan leave the scene with several other men in a pickup truck shortly after the assault.

There was no evidence of a familial relationship between Eversole and Morgan. The only evidence of the lack of Eversole and Morgan constituting a household was one comment by the defense's witness that Morgan had resided in Lufkin prior to the offense but had been "back and forth." However, that witness provided no work records or other documentation of Morgan's employment even though he contended that they did exist and he had been subpoenaed to bring them with him to court.

The contested issue in the violation of protective order offense was whether or not Morgan was there the day of the offense or if someone else who was seen at the residence actually assaulted Eversole. The jury, as the sole fact-finder and determiner of the credibility of the witnesses, chose to believe Eversole and the neighbor and to disbelieve Morgan's witness. The evidence of Morgan's guilt was strong and reduces the harm from the erroneous jury charge.

*Final Arguments of the Parties*

Morgan did not argue that he did not know of the existence of the protective order or that Eversole was a member of his family or household. Rather, the focus of the argument was on the inconsistencies found in the testimony and on whether

another individual committed the offense because Morgan was working in Lufkin.

In its closing argument, the State defined the offense of violation of protective order as "…the Defendant on or about a certain date in our county intentionally or knowingly committed family violence in violation of that order," which does not set forth each of the required elements. There was nothing further in either argument that increased the harm from the errors as shown above.

*Other Evidence from the Record as a Whole*

During voir dire, the State made references to a dating relationship being relevant to the violation of protective order offense, which it was not according to the indictment. The jury charge from the assault by occlusion charge contained definitions that, while applicable to the violation of protective order charge, were not included in the violation of protective order charge. The underlying assault alleged in the violation of protective order offense was not entirely related to the assault by occlusion, but also allowed findings of hitting, striking, or grabbing in addition to choking or suffocating. The assault by occlusion jury charge contained multiple errors as well, which increases the harm suffered by Morgan.

### CONCLUSION ON VIOLATION OF PROTECTIVE ORDER

While we recognize the strength of the evidence against Morgan, we cannot overlook the multiple errors in the jury charge including those which allowed the jury to convict Morgan without making findings as to required elements of the offense. We find that Morgan was egregiously harmed by the errors in the jury charge relating to the violation of protective order offense. We sustain issues one, two, and three.

### *Assault by Occlusion*

Having found that the jury charge relating to the assault by occlusion offense was erroneous because it included an unnecessary instruction relating to "family violence," set forth an improper "nature-of-conduct" *mens rea* relating to "knowingly," and omitted the definition of the term "family," we must next determine whether Morgan was egregiously harmed by the errors.

### *The Entire Jury Charge*

We must determine whether the jury charge as a whole increased or decreased the harm suffered by Morgan. One significant error in the jury charge on the assault by occlusion offense is that the section numbers from the Family Code set forth in the charge were never connected to the appropriate definitions in the abstract portion of the jury charge. The definitions of "household" and "dating relationship" were included in the abstract portion of the jury charge but the section numbers referenced in the application paragraph were never connected to those definitions or otherwise explained in the charge.

### *Inclusion of Definition of "Family Violence"*

The application paragraph in the charge for this offense erroneously referred to the offense as "Assault Family Violence by Occlusion," which is not the proper name for the offense and could also potentially allow the consideration of the threat portion of the definition as part of the offense. *See* TEX. FAM. CODE ANN. § 71.004 (definition of family violence). However, the jury had properly received this definition in the jury charge for the violation of a protective order, for which the definition was relevant in

part, but still not relevant as it defines family violence as constituting a threat of violence.

*Improper Mens rea*

The improper *mens rea* relating to the nature of Morgan's conduct was only provided in relation to the intent of "knowingly" but was erroneous. In the application paragraph, the State had attempted to abandon the allegation of "family" by striking the erroneous section number that had been alleged, but the State did not remove it from the term "a member of the Defendant's family or household," which was then limited to sections 71.005 and 71.0021(b), neither of which define "family." Section 71.0021(b) does not define either "family" or "household" but is the separate definition of "dating relationship."

*Omission of Definition of "Family"*

Because the State did not fully abandon the allegation of Eversole being a member of Morgan's family, the failure to include the definition was erroneous. However, because there was no evidence of a familial relationship between them, this failure does not increase the harm suffered by Morgan. We overrule issue five.

However, the other errors in the jury charge for the assault by occlusion offense did increase the harm suffered by Morgan.

### State of the Evidence

The assault by occlusion was the lesser-mentioned offense throughout the trial. Eversole testified that during the altercation between herself and Morgan, Morgan impeded her ability to breathe by holding his hand over her nose and mouth.

Photographs were introduced into evidence which showed that Eversole had sustained a cut on the inside of her mouth which was consistent with Eversole's account. There was no evidence presented that this did not in fact occur. The evidence of the assault by occlusion against Eversole, who was a member of Morgan's household, was strong and reduced the harm suffered by Morgan.

*Arguments of the Parties*

In his closing argument, Morgan contended that the evidence was not sufficient to establish beyond a reasonable doubt that Eversole's normal breathing or circulation of blood was impeded during the altercation. Morgan did not deny that some type of assault had occurred but that he was not there that day but someone else was. There was no argument by either the State or Morgan relating to the relationship between Morgan and Eversole as not being a household or dating relationship. The arguments of the parties did not describe the intent required or the erroneous "nature-of-conduct" definition. The arguments did not increase the harm suffered by Morgan.

*Other Evidence from the Record as a Whole*

In voir dire, the State referenced a dating relationship as being one of the ways that Morgan could have committed the offense of the assault by occlusion at least twice. There was no other evidence in the record from voir dire, the evidence, or the rest of the record as a whole beyond the inconsistencies and errors in each of the jury charges that caused harm to Morgan.

### CONCLUSION ON ASSAULT BY OCCLUSION

Ultimately, although the evidence against Morgan was strong, we find that the

multiple errors contained both in the application paragraph and the abstract portion of the charge caused egregious harm to Morgan because it allowed the jury to consider the irrelevant definition of "family violence" and a dating relationship which was never properly connected between the definitions in the abstract portion and the application paragraph.  We sustain issues two and three.

## *CONCLUSION*

Because we have found that the jury charges for each offense were erroneous and those errors caused egregious harm, we reverse the judgments of conviction and remand for a new trial on both offenses or as may be charged in the indictments as amended.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
  Reversed and Remanded
Opinion delivered and filed October 12, 2011
Do not publish
[CR25]